807 So.2d 750 (2002)
THE SCHOOL BOARD OF BROWARD COUNTY, Florida, a political subdivision of the State of Florida, Appellant,
v.
THE GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation, Appellee.
No. 4D01-2166.
District Court of Appeal of Florida, Fourth District.
February 13, 2002.
Rehearing Denied March 15, 2002.
F. Malcolm Cunningham, Jr., and Amy L. Fischer of Cunningham Law Firm, P.A., West Palm Beach, for appellant.
Bruce Charles King, and Latasha A. Gethers of Carlton Fields, P.A., Miami, for appellee.
GROSS, J.
The School Board of Broward County appeals the entry of summary final judgment in favor of the surety on a performance bond. We reverse, holding that the surety's tender of a new contractor did not comply with the requirement of the performance bond that the surety "correct" the contractor's default.
On August 3, 1999, the School Board entered into a written contract with Rockland Construction Company to construct an athletic field and sports complex at a high school for the price of $1,455,800.00. Pursuant to the contract, and in accordance with section 255.05(1)(a), Florida Statutes (1999), Great American Insurance *751 Company issued a performance bond for the project. The parties used the School Board's performance bond form, Document 00600.
The performance bond was executed for the benefit of the School Board. It was conditioned upon Rockland fully performing its contract for the contract price. In pertinent part, the bond provided:
[T]he conditions of this obligation are such that if [Rockland Construction Company] shall in all aspects fully comply with, carry out and perform the terms and conditions of said contract and his obligations thereunder, including the Specifications, Proposal, Plans and Contract Documents therein referred to and made a part hereof ... then this obligation to be void, otherwise, to remain in full force and effect.
In the event that [Rockland] shall fail to comply fully with, carry out and perform the terms and conditions of said specifications, proposal, plans, guarantees and contract documents therein referred to and made a part hereof, and [Great American] shall have failed to correct such default(s) within a reasonable time after written demand by the [School Board], the [School Board] shall be entitled to enforce any remedy against [Great American], available to the [School Board].
On September 20, 1999, before commencing the job, Rockland advised the School Board of its inability to perform the contract. The School Board declared the contract in default and made demand on Great American to complete the project. Great American contacted another contractor, Megan South Construction Company, who had also submitted a bid on the project. Great American offered to "tender" Megan South to enter into a new contract with the School Board to complete the project for the same price as in the Rockland contract. The tender contemplated that performance under this new contract would be guaranteed by a performance bond issued by another bonding company. Under this proposal, Great American would be released from its bond.
In two letters dated November 24, 1999, and December 6, 1999, the School Board rejected this offer and demanded that Great American "correct" the default by completing the project itself. The School Board opted to hold Great American responsible for completing the project by either "serving as the general contractor, handling disbursements of the School Board's money, or supervising Megan's work."
After further negotiations, the School Board defaulted Great American on March 7, 2000, and awarded the project to another contractor. On August 28, 2000, the School Board filed suit against Great American for breach of contract. The School Board moved for partial summary judgment on Great American's liability under the bond. The School Board contended that Great American's tender of a substitute contractor and demand for release did not satisfy its obligation under the bond to "correct" Rockland's default. Great American filed a response and cross motion for summary judgment. The trial court denied the School Board's motion for summary judgment, and granted final summary judgment in favor of Great American.
We agree with the School Board that Great American's tender of a new contractor and surety did not "correct" Rockland's default under the performance bond. The interpretation of the bond language urged by Great American would narrow the scope of coverage by allowing it to substitute a new contractor and surety for full performance under the contract. *752 To accept Great American's tender, the School Board would have had to give up its right to insist on performance by Great American under the bond. The condition of the bond was Rockland's full performance, the construction of an athletic field and sports complex. Great American did not "correct" Rockland's default by tendering only a new deal.
We reject Great American's argument that any ambiguity in the bond should be construed against the School Board as the drafter of the bond form used by the parties. That rule has no application here. This was a bond negotiated between sophisticated parties. Because bonds are its business, Great American was hardly at a disadvantage in dealing with the School Board. The rule of construction urged by Great American is "at best ... a secondary rule of interpretation, a `last resort' which may be invoked after all of the ordinary interpretative guides have been exhausted and there remain two or more reasonable interpretations of the language in question." Hurd v. Ill. Bell Tel. Co., 136 F.Supp. 125, 134 (N.D.Ill. 1955) (citing 3 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 559 (1951)). Florida's policy is to construe any ambiguity in a bond "in favor of granting the broadest possible coverage to those intended to be benefitted by protection of the bond." Nat'l Fire Ins. Co. of Hartford v. L.J. Clark Constr. Co., Inc., 579 So.2d 743, 745 (Fla. 4th DCA 1991); Gen. Ins. Co. of Am. v. Sentry Indem. Co., 384 So.2d 1305, 1306 (Fla. 5th DCA 1980). This policy recognizes that the purpose of a bond is to protect a party to a contract; the burden is on the surety, who is in the business, to include the appropriate language in its bonds if it seeks to narrow its obligations after default.
We reverse the summary judgment entered in favor of Great American. On remand, the court shall enter partial summary judgment in favor of the School Board, since Great American's initial tender did not "correct" the default within the meaning of the bond. This summary judgment does not resolve all liability issues. As to Great American's second offer to the School Board, the facts are not so crystallized that summary judgment is appropriate at this time. We affirm the trial court's ruling on the discovery issue.
WARNER and FARMER, JJ., concur.