916 So.2d 926 (2005)
Richard Edward PARKER, Appellant,
v.
Margaret J. PARKER, Appellee.
No. 4D04-1266.
District Court of Appeal of Florida, Fourth District.
November 30, 2005.
*927 Scott A. Lazar of Koltun & Lazar, P.A., Miami, for appellant.
No appearance for appellee.
TAYLOR, J.
Richard Parker [former husband] appeals an order dismissing his petition for relief based on fraud. The petition alleged that Margaret Parker [former wife] defrauded the former husband during their marital dissolution by misrepresenting the paternity of a minor child born during the marriage. According to the former husband, this misrepresentation resulted in his child support obligation. We conclude that the trial court correctly dismissed the petition, because the petition, which alleged intrinsic fraud, was not brought within one year of the dissolution decree.

The Facts
The petition filed by appellant alleged that the parties were married on June 26, 1996. A minor child was born of the marriage on June 10, 1998. The former wife represented to the former husband that he was the biological father, and the former husband had no reason to suspect otherwise.
On December 5, 2001, when the child was three and a half years old, the parties entered into a marital settlement agreement which obligated the former husband to pay $1,200 monthly in child support. This agreement was based on the former wife's representation that the former husband was the child's biological father. The marital settlement agreement was incorporated into the final judgment of dissolution dated December 7, 2001. During the dissolution of marriage proceeding, the former wife represented to the court and the former husband that the former husband was the child's biological father.
On or about March 28, 2003, the former wife filed a motion for contempt and enforcement, alleging that the former husband owed her certain monies for child support and the child's medical expenses. One week later, the former husband subjected the child to DNA paternity testing. The testing excluded the former husband as the child's biological father.
Immediately after the child's fifth birthday, the former husband filed this independent action, alleging that at all material times, the former wife knew that the former husband was not the child's biological father due to sexual relations she had with another man. He claims that she purposefully concealed the fact that he was not the child's biological father to collect child support from him.

*928 Procedural Setting

The trial court dismissed the petition with prejudice. The de novo standard of review applies to an order granting a motion to dismiss. Lopez-Infante v. Union Cent. Life Ins. Co., 809 So.2d 13 (Fla. 3d DCA 2002). In ruling on a motion to dismiss, courts are limited to the four corners of the complaint, must accept the allegations as true, and may not speculate as to what facts may ultimately be proven at trial. Id.
As a preliminary matter, we note that the husband filed this petition as an action for compensatory damages for past and future child support obligations. He did not file a motion for relief from judgment pursuant to Florida Rules of Civil Procedure 1.540, even though his petition alleges that the former wife perpetrated a fraud upon the court by falsely stating that the former husband was the biological father of the minor child. However, in his brief, he asks us to either consider this as a fraud on the court or remand so that he can amend to argue that theory in his pleading. Because he has not suggested that there are any additional facts which he seeks to add by amendment, we accept his invitation to treat this as if he had alleged in his petition that this was fraud on the court under Rule 1.540.
Because we are faced here with an attempt to upset the marital presumption of legitimacy in favor of a conclusion of illegitimacy and adultery, we are in territory "fraught with difficult social issues." Lefler v. Lefler, 722 So.2d 941, 943 (Fla. 4th DCA 1998) (Klein J., concurring) (Lefler I). One report states that as many as ten percent of all children born to married women during the 1940's were the product of adultery. Chris W. Altenbernd, Quasi-Marital Children: The Common Law's Failure in Privette and Daniel Calls for Statutory Reform, 26 FLA. ST. U.L.REV. 219, 227-28 (1999) (citing Jared Diamond, The Third Chimpanzee 85-87 (1992)). There is little reason to suspect that this number has declined.
The advancing technology has made the temptation to DNA test a child even greater:
While testing at one time involved a blood draw, many laboratories now offer testing with sample collection by mail... using cheek swabs. Testing hair and other materials easily collected without the knowledge or cooperation of the subject is increasingly available.
Mary J. Anderlik, Disestablishment Suits: What Hath Science Wrought?, 4 J. CENTER FOR FAMILIES, CHILD. & CTS. 3, 4 (2003). Thus, the instant case presents a question which can be expected to recur with increasing frequency.

Florida Paternity Law
In Daniel v. Daniel, 695 So.2d 1253 (Fla.1997), the trial court had required the former husband to pay child support as part of the marital dissolution decree, despite the fact that the child born during the marriage was not his biological child. The Second District Court of Appeal reversed. The Florida Supreme Court approved that decision, declaring it:
... the well-settled rule of law in this state that "a person has no legal duty to provide support for a minor child who is neither his natural nor his adopted child and for whose care and support he has not contracted."
Id. at 1254 (quoting Albert v. Albert, 415 So.2d 818, 820 (Fla. 2d DCA 1982)). Thus, had the former husband in this case presented the DNA test results at the time of dissolution, Daniel would have controlled and he would have no child support obligation. However, because he did not present these test results until more than a *929 year after the dissolution decree, he runs headlong into principles of res judicata.
In State, Department. of Health & Rehabilitative Services v. Robison, 629 So.2d 1000 (Fla. 3d DCA 1993), the court held that because the dissolution decree discussed "the minor children born of the marriage," the attempted re-determination of the paternity of the children was barred on res judicata grounds. Id.; see also Vereen v. Vereen, 581 So.2d 1004 (Fla. 1st DCA 1991) (post-dissolution paternity testing was barred by res judicata); State, Dep't. of Health and Rehabilitative Servs. Office of Child Support Enforcement v. Wright, 498 So.2d 1008 (Fla. 2d DCA 1986) (post-dissolution paternity issue res judicata); Decker v. Hunter, 460 So.2d 1014 (Fla. 3d DCA 1984) (same).
In D.F. v. Department of Revenue, 823 So.2d 97, 100 (Fla.2002), the Florida Supreme Court stated bluntly:
We hold that a final judgment of dissolution of marriage which establishes a child support obligation for a former husband is a final determination of paternity. Any subsequent challenge of paternity must be brought under the provisions of Florida Rule of Civil Procedure 1.540.

Relief from Judgments in Florida
Florida Rule of Civil Procedure 1.540(b) permits relief from judgments on grounds of fraud "whether heretofore denominated intrinsic or extrinsic" within one year of the judgment. This claim was brought outside one year, so this main fraud provision does not apply. See Anderson v. Anderson, 845 So.2d 870, 872 (Fla.2003) (stating that presumed father acted within "one-year window" after divorce decree to set aside paternity based on fraud). However, this rule further provides:
This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.
Fla. R. Civ. P. 1.540(b) (2004). The former husband argues, and we agree, that his action is essentially an attempt to set aside the dissolution decree's paternity and child support obligations for fraud on the court, i.e., extrinsic fraud. See Dep't. of Revenue v. Byrd, 710 So.2d 1036 (Fla. 1st DCA 1998) (stating that seven year old paternity judgment could be set aside only on ground of extrinsic fraud); State Dep't. of Revenue v. Harris, 684 So.2d 231, 232 (Fla. 2d DCA 1996) (stating that in the paternity context the only way to get relief from judgment after one year is by showing extrinsic rather than intrinsic fraud).[1]
The distinction between intrinsic and extrinsic fraud is "elusive," particularly where the circumstances appear to be somewhat of a "hybrid" nature. Guerriero v. Schaub, 579 So.2d 370, 371 (Fla. 4th DCA 1991). "Extrinsic fraud, which constitutes fraud on the court, involves conduct which is collateral to the issues tried in a case." Cerniglia v. Cerniglia, 679 So.2d 1160, 1163 (Fla.1996). The leading Florida case on extrinsic fraud, DeClaire v. Yohanan, 453 So.2d 375, 377 (Fla.1984), summed up the concept, stating that extrinsic fraud occurs "where a defendant has somehow been prevented from participating in a cause." 453 So.2d at 377. It *930 defined intrinsic fraud as "fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried." Id. The court went on to state:
When an issue is before a court for resolution, and the complaining party could have addressed the issue in the proceeding, such as attacking the false testimony or misrepresentation through cross-examination and other evidence, then the improper conduct, even though it may be perjury, is intrinsic fraud and an attack on a final judgment based on such fraud must be made within one year of the entry of the judgment.
Id. at 380.[2]
In Winston v. Winston, 684 So.2d 315, 319 (Fla. 4th DCA 1996), we stated:
Where a claim of fraud rests on the contention that a party has been misled as to the meaning or effect of documents actually presented to the court, the claim rests on intrinsic fraud. This is so even though some of the allegedly fraudulent or deceitful acts or omissions may have occurred extrajudicially.
Presumably, this would apply to the marital settlement agreement in this case.
In Guerriero, 579 So.2d at 371, we stated:
Generally, where a party can raise an issue in the initial case, any improper or fraudulent conduct by the opposing party, even if egregious, is deemed to be intrinsic to that proceeding. Generally, extrinsic fraud is found where a party is prevented from participating in an action by conduct which is collateral to the issues in the cause.
We believe that the basic misrepresentation alleged in this case concerned an issue that could have been raised in the dissolution proceedings, rather than an issue collateral to those proceedings.
The former husband relies primarily upon the first district's decision in M.A.F. v. G.L.K., 573 So.2d 862, 863 (Fla. 1st DCA 1990). There, the court held that the wife's concealment from the husband that he was not the biological father of the children born during the marriage was extrinsic fraud upon the court, so that the husband's petition to vacate his child support obligations was not barred by the doctrine of res judicata.
In Lefler v. Lefler, 776 So.2d 319, 322 (Fla. 4th DCA 2001) (Lefler II), we disagreed with M.A.F. Lefler II may be distinguishable because the trial court there found that the husband had reason to question the child's parentage but did not act. However, our rationale in Lefler II went to the heart of the intrinsic/extrinsic dichotomy, irrespective of this reliance factor, stating that:
... the wife's failure to disclose the child's true parentage would not constitute extrinsic fraud, regardless of whether her silence was relied on by the husband in entering into a marriage settlement agreement as to child support.
Id. at 322. We adhere to that view and certify conflict with the first district's decision in M.A.F.[3]

The Law in Other Jurisdictions
Our research discloses numerous cases wherein courts in other jurisdictions have considered this extrinsic fraud question. *931 The prevailing view appears to be that the nondisclosure of true paternity presents a question of intrinsic fraud.
Texas appellate courts have the highest number of reported cases on this issue. They have consistently ruled that concealment or misrepresentation of paternity during divorce proceedings involves intrinsic fraud. See Temple v. Archambo, 161 S.W.3d 217 (Tex.App.Corpus Christi 2005); Martindale v. Reno, 132 S.W.3d 462 (Tex. App.-Eastland 2003); Ince v. Ince, 58 S.W.3d 187 (Tex.App.-Waco 2001); Freeman v. Freeman, 1998 WL 830533 (Tex. App.-Austin 1998) (not designated for publication); see also Wise v. Fryar, 49 S.W.3d 450 (Tex.App.-Eastland 2001).
The most recent decision in Temple is typical. There the former wife was alleged to have represented to the former husband that he was the father. After the divorce it became apparent to him that his daughter did not look like him. Paternity testing then excluded him as the father. The court stated:
Paternity, although not contested, was an issue agreed to by the parties and addressed and resolved by the trial court.... The decree establishes the parent-child relationship. Temple did not allege any act on the part of Archambo that prevented him from contesting the issue of paternity.... He did not allege that he could not contest paternity at the final divorce hearing or that he was denied that defense as a matter of law. We conclude that Temple alleged only intrinsic fraud because his "meritorious defense" could have been fully presented at the original proceeding.
Temple, 161 S.W.3d at 225-26 (citations omitted). Although not as developed, Arkansas law is similar. See Graves v. Stevison, 81 Ark.App. 137, 98 S.W.3d 848 (2003); State Office of Child Support Enforcement v. Mitchell, 61 Ark.App. 54, 964 S.W.2d 218 (1998).
The Vermont Supreme Court's decision in Godin v. Godin, 168 Vt. 514, 725 A.2d 904 (1998), took a slightly different tack in reaching the same result. That court held that the mother's representation in the original divorce proceeding that the child was "born of the marriage" merely signified that the child was born while the parties were legally married, so that it was not a materially false statement. It went on to hold that the mere non-disclosure to an adverse party of facts pertinent to a controversy does not constitute fraud on the court for purposes of vacating the judgment. Godin was a 4-1 decision. However, even the dissenter recognized that the wife's affirmative representations to the court were not as to a collateral matter, but were as to "central facts upon which the divorce court must act to protect the children before it." Id. at 916 (Dooley, J. dissenting).
In Miller v. Miller, 956 P.2d 887, 905 (Okla.1998), the Oklahoma Supreme Court found that the former wife's misrepresentations during the divorce decree were intrinsic fraud, as perjury is the prototypical example of intrinsic fraud. It continued:
The remaining acts of fraud which plaintiff alleges, the original premarital fraud and the ongoing misrepresentation of paternity prior to the divorce, were not perpetrated by Judy in the procurement of the support order and therefore, do not constitute the kind of fraud which will warrant the intervention of equity to order vacation of a judgment and restitution.
Id.
In Mr. G v. Mrs. G, 320 S.C. 305, 465 S.E.2d 101, 103 (1995), the familiar fact pattern yielded a similarly familiar result:

*932 Here, the alleged fraud, Mrs. G.'s lying to Mr. G about paternity of the child in controversy, is intrinsic, not extrinsic, because the alleged misrepresentation relates directly, not collaterally, to a matter determined in the former proceedings, namely the question of the child's paternity.
In the early 1980s, the Alabama courts ruled that references in a divorce decree to the parties' minor child rendered paternity res judicata and that the former wife's misrepresentations to the court were not extrinsic fraud. Stewart v. Stewart, 392 So.2d 1194 (Ala.Civ.App.1980); see also Anonymous v. Anonymous, 473 So.2d 502 (Ala.Civ.App.1984). These rulings would later be largely superseded by the Alabama legislature's adoption of legislation permitting the challenge of paternity at any time based on DNA testing. Of course, Florida has no such legislation.
We note that Nevada has held that a wife's misrepresentations of paternity are extrinsic fraud which will permit reopening the divorce decree. See Love v. Love, 114 Nev. 572, 959 P.2d 523 (1998). However, we disagree with this apparent minority view.

Policy Considerations
Because the effect of our conclusion is to create a one-year window after the divorce to perform any DNA testing or be forever barred, we now discuss whether a time-based limitation is supportable as a matter of policy. There is ample authority that post-dissolution challenges to paternity should not be permitted beyond a "relatively brief passage of time." In re Paternity of Cheryl, 434 Mass. 23, 746 N.E.2d 488, 495 (2001) (quoting Nancy Darlene M. v. James Lee M., 195 W.Va. 153, 464 S.E.2d 795 (1995)).
We consider it significant that many states have legislatively adopted a "statute of limitations" approach based on the age of the child. The original Uniform Parentage Act (UPA), which has been adopted by 19 states (in whole or in part) mandated a five-year limitations period, so that any petition to disestablish would have to be brought by the child's fifth birthday or be forever barred. Theresa Glennon, Somebody's Child: Evaluating the Erosion of the Marital Presumption of Paternity, 102 W. VA. L.REV. 547, 566 (2000). Several other states (including California and Oklahoma) and the 2000 version of the UPA (adopted by four states), now provide for a two-year limitations period from the child's birth. See Anderlik, supra, at 14. Had the minor child in this case lived in any of these states, his legitimacy would be safe from disruption, as he was five years old at the time this petition was filed.
In her dissenting opinion in Mr. G, Judge Hearn pointed out a potential policy ramification of refusing a post-dissolution disestablishment suit:
The holding that the allegations of fraud contained in Mr. G's complaint cannot serve as the basis for attacking a judgment may be interpreted by the Family Court bar to require every male litigant in a domestic proceeding to request and secure a blood test.
465 S.E.2d at 106 (Hearn J., dissenting). While this view appears a bit extreme, there may be some merit in telling divorcing fathers who are in doubt to "test now, or forever hold your peace."
Many courts state that there is an overriding special concern for the finality of judgments in this area. See Paternity of Cheryl, 746 N.E.2d at 495 ("compelling public interest in the finality of paternity judgments"); see also Matter of Paternity of JRW, 814 P.2d 1256, 1265 (Wyo.1991) (stating that finality is especially important in divorce cases because of the emotional *933 involvement which magnifies matters); Hackley v. Hackley, 426 Mich. 582, 395 N.W.2d 906, 914 (1986) (stating that there is no area of the law requiring more finality and stability than family law).
In Ince, 58 S.W.3d at 191, the Texas appeals court said of the parental relationship established by the divorce decree:
The relationship was ... recognized, confirmed and became final under all the rules and with the formalities and solemnities accorded the creation and recognition of other legal relationships. The judgment at issue in this case should not be set aside because one of the individuals involved has become unhappy with the continued existence of it.
The Vermont Supreme Court agreed that finality is important, taking the view that the public interest primarily derives from the interests of the child:
Thus, the State retains a strong and direct interest in ensuring that children born of a marriage do not suffer financially or psychologically merely because of a parent's belated and self-serving concern over a child's biological origins. These themes underlie the conclusion, reached by numerous courts, that the public interest in finality of paternity determinations is compelling, and that the doctrine of res judicata therefore bars subsequent attempts to disprove paternity.
Godin, 725 A.2d at 910.
The fundamental choice in these cases is between the interests of the legal father on the one hand and the child on the other. The Vermont Supreme Court stated:
Although we understand plaintiff's interest in ascertaining the true genetic makeup of the child, we agree with the many jurisdictions holding that the financial and emotional welfare of the child, and the preservation of an established parent-child relationship, must remain paramount. Where the presumptive father has held himself out as the child's parent, and engaged in an ongoing parent-child relationship for a period of years, he may not disavow that relationship and destroy a child's long-held assumptions, solely for his own self-interest.
Id.; see also In re Marriage of Wendy M., 92 Wash.App. 430, 962 P.2d 130, 134 (1998) (stating that while former husband had an interest in avoiding erroneous child support, he could not sacrifice the child's interest to protect his own); Hackley v. Hackley, 426 Mich. 582, 395 N.W.2d 906 (holding that best interests of child must prevail over unfairness to former husband challenging paternity nine years after his divorce).
The main issue affecting the child in a disestablishment suit is the psychological devastation that the child will undoubtedly experience from losing the only father he or she has ever known. See Paternity of Cheryl, 434 Mass. 23, 746 N.E.2d 488, 495-96; Marriage of Wendy, 962 P.2d at 133; Mr. G, 465 S.E.2d at 104-05. As Theresa Glennon pointed out, these children are hit with a "double-whammy." First, they must endure the trauma of divorce, then experience the pain of their parentage in dispute. Glennon, supra, at 549-50.
We realize that as judges, we cannot order a man to love a child. In Paternity of Cheryl, the Massachusetts Supreme Court stated that it harbored no illusions about its ability to protect the child fully from the consequences of the former husband's decisions. Still, it felt that relieving the former husband of his financial obligations might itself "unravel the parental ties, as the payment of child support `is a strand tightly interwoven with other forms of connection between father and child,' and often forms a critical bond between them." Paternity of Cheryl, 746 N.E.2d at *934 499 (quoting Bowen v. Gilliard, 483 U.S. 587, 617, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987) (Brennan, J., dissenting)). Or, as the Iowa Supreme Court more bluntly put it, "We hope that David's heart will follow his money." Dye v. Geiger, 554 N.W.2d 538, 541 (Iowa 1996).
Other courts have been less kind. The Vermont Supreme Court in Godin, said:
The fact that plaintiff chose for self-serving purposes to jeopardize his relationship with Christina is beyond our control. We need not, however, award plaintiff a financial windfall for his conduct, or deprive Christina of not only a father's affection, but also the legal rights and financial benefits of the parental relationship.
725 A.2d at 911; see also Niccol Kording, Nature v. Nurture: Children Left Father-less and Family-less When Nature Prevails in Paternity Actions, 65 U. PITT. L.REV. 811, 851 (2004). By refusing to set aside paternity decrees based on belated requests, courts "will help deter other parents who might otherwise seek, for financial or other self-serving reasons, to dissolve their parental bonds." Godin, 725 A.2d at 911.
Stability and continuity of support, both emotional and financial, are essential to a child's welfare. Paternity of Cheryl, 746 N.E.2d at 495. Indeed, one of the factors most important to a child's post-divorce adjustment is the degree of economic hardship. Glennon, supra, at 561.
We recognize that the former husband in this case may feel victimized. However, Theresa Glennon argues cogently that:
[w]hile some individuals are innocent victims of deceptive partners, adults are aware of the high incidence of infidelity and only they, not the children, are able to act to ensure that the biological ties they may deem essential are present.... The law should discourage adults from treating children they have parented as expendable when their adult relationships fall apart. It is the adults who can and should absorb the pain of betrayal rather than inflict additional betrayal on the involved children.
Anderlik, supra, at 18 (quoting Theresa Glennon, Expendable Children: Defining Belonging in a Broken World, 8 DUKE J. GENDER L. & POLICY 269, 275(2001)).

Conclusion
In sum, we conclude, along with the majority of states, that the issue of paternity misrepresentation in marital dissolution proceedings is a matter of intrinsic fraud. It is not extrinsic fraud, or a fraud upon the court, that can form the basis for relief from judgment more than a year later. Any relevant policy considerations that would compel a different result are best addressed by the legislature.
For the reasons stated above, we affirm the trial court's dismissal of the former husband's petition for relief based on fraud.
Affirmed.
WARNER and KLEIN, JJ., concur.
NOTES
[1] We note that there is a special rule, Fla. Fam. L.R.P. 12.540, which provides that there is no time limit for motions for relief from judgments in family law cases where the motion is based on a fraudulent financial affidavit. However, the Florida Supreme Court has not extended such relief to those in the former husband's situation by adopting a similar rule to permit paternity challenges based on DNA testing at any time.
[2] The "fraud" at issue in DeClaire was a husband's false financial affidavit, which the court found was intrinsic fraud. This ruling ultimately led to the special family law rule discussed in the earlier footnote.
[3] We see no distinction between the wife's silence about paternity in Lefler II and the affirmative misrepresentation of paternity alleged here.