950 So.2d 388 (2007)
Richard Edward PARKER, Petitioner,
v.
Margaret J. PARKER, Respondent.
No. SC05-2346.
Supreme Court of Florida.
February 1, 2007.
*389 Scott A. Lazar of Koltun and Lazar, P.A., Miami, FL, for Petitioner.
Margaret J. Parker, pro se, Coral Springs, FL, for Respondent.
BELL, J.
We have for review Parker v. Parker, 916 So.2d 926 (Fla. 4th DCA 2005), in which the Fourth District Court of Appeal certified conflict with the First District Court of Appeal's decision in M.A.F. v. G.L.K., 573 So.2d 862 (Fla. 1st DCA 1990).[1] The conflict issue is whether a wife's misrepresentation of paternity in a dissolution of marriage proceeding is extrinsic or intrinsic fraud. This differentiation is significant because of the one-year limitation for filing a motion for relief from judgment under Florida Rule of Civil Procedure 1.540(b). As explained below, we agree with the Fourth District that this type of misconduct is intrinsic fraud and, therefore, relief from any judgment based upon such fraud must be sought within one year. Consequently, we approve the Fourth District's decision in Parker finding that the petitioner's motion is time-barred, and we disapprove the First District's conflicting decision in M.A.F. Consistent with our resolution of this issue, we also reject the petitioner's alternative request that we reinstate his independent action against his former wife for damages based on this fraud.

I. FACTUAL AND PROCEDURAL BACKGROUND
The conflict issue arises from the following facts in Parker. Richard Parker, petitioner, and Margaret Parker, respondent, were married in 1996. Almost two years later, a child was born to the marriage. During the parties' dissolution of marriage proceeding in 2001, Margaret represented to the court as well as to Richard that he was the child's biological father. On December 7, 2001, a final judgment was entered dissolving the parties' marriage. This judgment incorporated a revised marital settlement agreement acknowledging Richard as the father of the couple's minor child and requiring him to pay child support.
In March 2003, Margaret filed a motion for contempt and a petition to enforce child support against Richard. In response, *390 Richard had a DNA test conducted and discovered that he was not the child's biological father. In June 2003, Richard filed an independent civil action against Margaret claiming fraud and seeking compensatory damages for past and future child support obligations. The trial court dismissed Richard's civil action with prejudice. Richard appealed to the Fourth District, which, at Richard's request, treated the claim as a motion for relief from the dissolution of marriage final order pursuant to Florida Rule of Civil Procedure 1.540(b).
Following a thorough discussion, the Fourth District ultimately held that "the issue of paternity misrepresentation in marital dissolution proceedings is a matter of intrinsic fraud. It is not extrinsic fraud, or a fraud upon the court, that can form the basis for relief from judgment more than a year later." Parker, 916 So.2d at 934. The Fourth District also certified conflict with the First District's decision in M.A.F. Id. at 930. In M.A.F, the First District held that
when a wife knows that her husband is not the father of her children, and the husband does not know, concealment of that knowledge in a divorce proceeding involving child support is extrinsic fraud upon the court. The husband's petition was not barred by the doctrine of res judicata or the one year limitation of actions provision of Florida Rule of Civil Procedure 1.540(b).
M.A.F., 573 So.2d at 863.

II. DISCUSSION
To reiterate, the conflict issue is whether a wife's misrepresentation of paternity in a dissolution of marriage proceeding is extrinsic or intrinsic fraud. This distinction is important because of the one-year limitation for filing a motion for relief from judgment under Florida Rule of Civil Procedure 1.540(b). At the outset, we acknowledge the difficulty of this issue and that the First District's approach in M.A.F. is certainly well reasoned. However, we find that the essential reasoning and conclusion of the Fourth District's decision in Parker best reflects this Court's precedent concerning the distinctions between extrinsic and intrinsic fraud in the context of marital dissolution proceedings. In reaching this conclusion, we outline the reasoning of the Fourth District in Parker as follows: first, we discuss this Court's precedent concerning the distinctions between extrinsic and intrinsic fraud in the context of dissolution of marriage cases, as revisited in Parker; second, we discuss the Fourth District's specific application of this Court's precedent to the facts in Parker and approve its ultimate conclusion; and finally, we briefly discuss the balance of policy considerations addressed in Parker and M.A.F. and express our agreement with the Fourth District that any changes requiring a different result should be made by the Legislature, particularly with regard to the presumption of legitimacy.

A. Extrinsic Versus Intrinsic Fraud in Marital Dissolution Proceedings
The Fourth District's essential reasoning and conclusion in Parker reflects this Court's precedent regarding the distinctions between extrinsic and intrinsic fraud in the context of marital dissolution proceedings. As a threshold matter, the Fourth District considered the petitioner's action as a motion to vacate the final judgment dissolving the marriage and establishing paternity under rule 1.540(b) in keeping with this Court's precedent in D.F. v. Dep't of Revenue ex rel. L.F., 823 So.2d 97 (Fla.2002). In D.F., this Court recognized that because a determination of child support in a final dissolution of marriage order is deemed a final determination of paternity, relitigation of paternity is *391 barred by res judicata, and a party seeking relief from child support obligations established during the dissolution of marriage proceedings must proceed under rule 1.540. See id. at 100; see also Parker, 916 So.2d at 929 (quoting portion of holding in D.F.).
Under rule 1.540(b), relief from a judgment based on intrinsic fraud must be sought by motion within one year of its entry. However, this one-year limit does not apply to extrinsic fraud, because extrinsic fraud is considered "fraud on the court." See DeClaire v. Yohanan, 453 So.2d 375, 377 (Fla.1984), and discussion infra. Rule 1.540(b) specifically provides that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court." See DeClaire, 453 So.2d at 378 ("[Rule 1.540(b)] clearly preserves the equitable remedy of an independent action where extrinsic fraud is established.").
After determining that the petitioner's action would be treated as a motion under rule 1.540(b), the Fourth District revisited this Court's explanation of the substantive distinctions between extrinsic and intrinsic fraud in DeClaire v. Yohanan. In DeClaire, this Court considered whether a husband's presentation of false financial affidavits during a dissolution of marriage proceeding constituted extrinsic or intrinsic fraud. This Court detailed the distinction between extrinsic and intrinsic fraud in DeClaire as follows:
Extrinsic fraud involves conduct which is collateral to the issues tried in a case. . . . [T]his Court has defined extrinsic fraud as the
prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on.

Fair v. Tampa Electric Co., 158 Fla. 15, 18, 27 So.2d 514, 515 (1946). See Black's Law Dictionary 595 (rev. 5th ed.1979). In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause.
Intrinsic fraud, on the other hand, applies to fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried. This Court . . . has expressly held that false testimony given in a proceeding is intrinsic fraud. We have stated that
[i]f a judgment was obtained upon false testimony or a fraudulent instrument and the parties were heard, the evidence submitted to and received consideration by the court, then it may be said that the matter has been actually tried, or was so in issue that it might have been tried and the parties are estopped to set up an intrinsic or direct fraud to vitiate the judgment, because the judgment is the highest evidence and cannot be contradicted by the parties to it.

Johnson v. Wells, 72 Fla. 290, 299, 73 So. 188, 191 (1916) (citation omitted).
DeClaire, 453 So.2d at 377 (emphasis added). In essence, extrinsic fraud is conduct which prevents a party from trying an issue before the court, and the prevention itself becomes a collateral issue to the cause; whereas intrinsic fraud is the presentation of misleading information on an issue before the court that was tried or could have been tried. Id.
*392 In DeClaire, this Court also explained the procedural significance of the substantive distinction between extrinsic and intrinsic fraud. As this Court explained,

The concept of fraud on the court has historically been limited in its application to ensure the finality of judgments and to avoid frequent attacks against final judgments. Prior to the adoption of Florida Rule of Civil Procedure 1.540(b), only what was defined as "extrinsic fraud" could, in reality, form the basis for relief from a judgment. Johnson v. Wells; Fair v. Tampa Electric Co. Further, such relief could be obtained only by an independent action in equity. There was no practical basis for relief from a judgment obtained by intrinsic fraud. . . .
. . . .
Where relief from a judgment is sought by motion [under rule 1.540(b)], "[t]he motion is filed in the action in which the judgment was rendered." Trawick, Florida Practice and Procedure § 26.8 (1982). Where relief is sought by independent action, however, "[t]he action is not a continuation of the action in which the judgment . . . under attack was entered. A new complaint is filed, service of process is made and the new action follows the same procedure as other civil actions." Id.

. . . It should be clearly understood that rule 1.540(b) broadened the grounds upon which a final judgment could be attacked, but created a one-year limitations period within which such an attack must be made. The rule does not change the existing definitions of intrinsic and extrinsic fraud or change the type of conduct which constitutes fraud on the court.
DeClaire, 453 So.2d at 378-79 (emphasis added). Thus, where fraud is extrinsic, it is deemed independent of the action and, therefore, must be attacked independent of the action. However, where fraud is intrinsic, it is deemed to have occurred in the current action and must be attacked by a rule 1.540(b) motion directed at the current action. And because rule 1.540(b) seeks to achieve finality, the motion must be filed within one year of the final judgment.

B. Essential Reasoning and Conclusion of the Fourth District
After revisiting DeClaire's distinction between intrinsic and extrinsic fraud, the Fourth District applied this distinction as well as its prior precedent in Guerriero v. Schaub, 579 So.2d 370 (Fla. 4th DCA 1991), to the fraud presented in this case. Just as we concluded in DeClaire that a husband's presentation of false financial affidavits was intrinsic fraud,[2] the Fourth District concluded in Parker that the wife's false misrepresentation concerning paternity is intrinsic fraud because it "concerned an issue that could have been raised in the dissolution proceedings, rather than an issue collateral to those proceedings." Parker, 916 So.2d at 930. The Fourth District further noted that its decision is in line with the majority view of our sister states[3] and with current policy considerations *393 in this State. Id. at 931-33. Accordingly, the Fourth District held as follows:
[W]e conclude, along with the majority of states, that the issue of paternity misrepresentation in marital dissolution proceedings is a matter of intrinsic fraud. It is not extrinsic fraud, or a fraud upon the court, that can form the basis for relief from judgment more than a year later. Any relevant policy considerations that would compel a different result are best addressed by the legislature.
Id. at 934 (affirming the trial court's dismissal of the husband's petition for relief based on fraud).
We agree with the essential reasoning and conclusion of the Fourth District as stated above. Though there are strong arguments in favor of finding the wife's misconduct in this case to be extrinsic fraud, we believe that the Fourth District reached the result which best reflects this Court's precedent. Contrary to the First District's analysis, paternity is not an issue that "was tried or could have been tried" only when the husband actually contests paternity during the dissolution of marriage proceeding. Rather, paternity is an issue which not only can be tried but actually is tried by virtue of the existence of a minor child to the marriage. See § 61.052, Fla. Stat. (1999) (requiring trial courts to take notice that there is a minor child belonging to a marriage and to take appropriate steps to further the best interests of the child and the parties during the pendency of the action); D.F., 823 So.2d at 100 (holding that a final order dissolving the marriage and establishing child support serves as a final determination of paternity).
Accordingly, we agree with the essential reasoning of the Fourth District and its conclusion that the former wife's misrepresentation concerning paternity during the dissolution of marriage proceedings constitutes intrinsic fraud. Consequently, we agree with the Fourth District's conclusion that the petitioner's rule 1.540(b) motion was barred because it was not brought within one year of the judgment dissolving the marriage and establishing paternity.

C. Balance of Policy Considerations
Moreover, we agree with the Fourth District's reasoning in Parker that the balance of policy considerations does not require a different result, particularly with regard to the presumption of legitimacy. We find that the balance of policy considerations favors protecting the best interests of the child over protecting the interests of one parent defrauded by the other parent in the midst of a divorce proceeding. The Fourth District presents a fair summary of our concerns, as follows:
We recognize that the former husband in this case may feel victimized. However, Theresa Glennon argues cogently that:
[w]hile some individuals are innocent victims of deceptive partners, adults are aware of the high incidence of infidelity and only they, not the children, are able to act to ensure that *394 the biological ties they may deem essential are present. . . . The law should discourage adults from treating children they have parented as expendable when their adult relationships fall apart. It is the adults who can and should absorb the pain of betrayal rather than inflict additional betrayal on the involved children.
[Mary J. Anderlik, Disestablishment Suits: What Hath Science Wrought?, 4 J. Center for Families, Child. & Cts. 3, 18 (2003)] (quoting Theresa Glennon, Expendable Children: Defining Belonging in a Broken World, 8 Duke J. Gender L. & Pol'y 269, 275 (2001)).
Parker, 916 So.2d at 934.[4]
The petitioner urges this Court to adopt the reasoning of the First District in M.A.F. In M.A.F., the First District found that because paternity is presumed when a child is born to a marriage due to the presumption of legitimacy, a father is under no obligation to contest or try the issue of paternity during the dissolution of marriage proceedings; and because the father in that case had no reason to contest paternity otherwise, the wife's misrepresentation concerning paternity constituted extrinsic fraud which may be attacked any time. See M.A.F., 573 So.2d at 863. However, as we have stated, the presumption of legitimacy was created primarily to protect the welfare of the child. Sacks v. Sacks, 267 So.2d 73, 76 (Fla.1972). The presumption of legitimacy is a constitutional right afforded to every child born into a marriage granting the child the right to remain legitimate, both legally and factually, if doing so is in the child's best interest. See art. I, § 9, Fla. Const.; see also Dep't of Health & Rehab. Servs. v. Privette, 617 So.2d 305, 307 (Fla.1993). Furthermore, courts have consistently held that it is generally in a child's best interest to promote stability and finality in matters of paternity. See, e.g., Fla. Dep't of Revenue ex rel. R.A.E. v. M.L.S., 756 So.2d 125, 127 (Fla. 2d DCA 2000) (citing Benac v. Bree, 590 So.2d 536 (Fla. 2d DCA 1991); Marshall v. Marshall, 386 So.2d 11 (Fla. 5th DCA 1980)).
While we certainly are mindful of the impact this decision has on the petitioner's interests, as explained above, the current balance of policy considerations favors protecting the best interests of the child over protecting the interests of one parent defrauded by the other parent in the midst of a divorce proceeding. Thus, we agree with the Fourth District that the current balance of policy considerations does not require a different result and that any policy considerations requiring a different result, particularly with regard to the presumption of legitimacy, are best addressed by the Legislature.[5]
Accordingly, we approve the essential reasoning and conclusion of the Fourth District's opinion in Parker and disapprove the First District's opinion in M.A.F.

III. REQUEST TO REINSTATE CIVIL SUIT
Finally, we reject the petitioner's alternative argument that his original cause of action for damages should be reinstated. First, as determined above, the petitioner cannot sustain an independent *395 action for fraud because his former wife's misrepresentations concerning his paternity did not constitute extrinsic fraud. Furthermore, a civil suit for compensatory damages based on fraud is not the proper vehicle for attacking a final judgment based on alleged extrinsic fraud. Rather, as stated above, the proper vehicle is an action in equity. See DeClaire, 453 So.2d at 378 (stating that rule 1.540(b) "preserves the equitable remedy of an independent action where extrinsic fraud is established").[6] Accordingly, we deny the petitioner's request to reinstate his independent action for damages.

IV. CONCLUSION
For the foregoing reasons, we approve the Fourth District's decision in Parker and disapprove the First District's decision in M.A.F. We hold that a wife's false misrepresentation concerning her husband's paternity during a dissolution of marriage proceeding constitutes intrinsic fraud which must be attacked by a rule 1.540(b) motion filed within one year of the final judgment dissolving the marriage. Accordingly, we agree with the Fourth District that the petitioner's attempt to vacate the final judgment dissolving his marriage is time-barred. We also deny the petitioner's request to reinstate his civil suit for damages.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
[2] With regard to this Court's specific holding in DeClaire, as the Fourth District noted in Lefler v. Lefler, 776 So.2d 319, 322 n. 1 (Fla. 4th DCA 2001), "DeClaire has been superseded . . . by amendments to Florida Rule of Civil Procedure 1.540(b) and Florida Family Law Rule 12.540, which eliminates the one year rule for cases of false financial affidavits in a family law case."
[3] As noted by the Fourth District in Parker, 916 So.2d at 931-33, the majority of states have also found the type of fraud alleged in Parker to be intrinsic fraud. For example, courts in Alabama, Arkansas, Oklahoma, South Carolina, Texas, and Vermont have held that a wife's misrepresentation regarding paternity in a dissolution of marriage proceeding constitutes intrinsic fraud, not extrinsic fraud. See, e.g., Anonymous v. Anonymous, 473 So.2d 502 (Ala.Civ.App.1984); Graves v. Stevison, 81 Ark.App. 137, 98 S.W.3d 848 (2003); Miller v. Miller, 956 P.2d 887, 905 (Okla.1998); Mr. G. v. Mrs. G, 320 S.C. 305, 465 S.E.2d 101, 103 (App.1995); Temple v. Archambo, 161 S.W.3d 217 (Tex. App.2005); Godin v. Godin, 168 Vt. 514, 725 A.2d 904 (1998). Nevada is in the minority, finding this type of fraud to be extrinsic because it prevents the husband from knowing he has a claim or defense. Love v. Love, 114 Nev. 572, 959 P.2d 523 (1998).
[4] For a more detailed discussion of the decisions of our sister states and relevant policy considerations, see the Fourth District's discussion in Parker, 916 So.2d at 930-34.
[5] We note that the Legislature did, in fact, address some of these policy considerations when it enacted section 742.18, Florida Statutes, in 2006, which provides the circumstances and procedures under which a male may disestablish paternity and terminate a child support obligation. However, we have not considered and do not address the applicability of this new statute to the petitioner's circumstances.
[6] Moreover, as referenced in footnote 5, supra, we note that section 742.18, which provides the means and procedures by which a male may petition the trial court to disestablish paternity and terminate a child support obligation, forecloses the right to be compensated for child support already paid. § 742.18(5), Fla. Stat. (2006) ("This section shall not be construed to create a cause of action to recover child support that was previously paid.").