# Third District Court of Appeal

### State of Florida

Opinion filed February 17, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2351
Lower Tribunal No. 14-716
_____

**Daria Pastouhkova Gogoleva, et al.,**
Appellants,

vs.

**Jeffrey Soffer, et al.,**
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Phillips, Cantor, Shalek, Rubin & Pfister, and Gary S. Phillips and Edward J. Pfister (Hollywood), for appellants.

Colson Hicks Eidson and Roberto Martinez and Curtis Miner and Stephanie Casey; Kobre & Kim and Matthew I. Menchel and Adriana Riviere-Badell; Ross & Girten and Lauri Waldman Ross; Gelber, Schachter & Greenberg and Freddy R. Funes and Daniel Gelber, for appellees.

Before ROTHENBERG, SALTER and LOGUE, JJ.

SALTER, J.

Daria Gogoleva, individually and in her various capacities as personal representative of the estate of her late husband and guardian of the couple's three minor children, appeals orders dismissing her amended complaint and denying a transfer of the claims to the probate division of the circuit court.[1] The combined effect of these orders is a final adverse and appealable determination that Gogoleva's action could not proceed in either the civil or probate division.

Following a review of the amended complaint, the orders sought to be reviewed, and the balance of the record in this case, we affirm certain conclusions of law by the trial court. We reverse and remand, however, the trial court's constraints on Gogoleva's ability to amend in an effort to correct deficiencies in the first amended complaint.

I.    Facts and Procedural History

The 48-page amended complaint contains the following factual allegations, which we take as true for the purpose of assessing whether the amended complaint is legally sufficient and (if not) whether further amendment would be futile. The allegations have not been proven, and the defendants have not yet responded to the

---

[1] Although the order denying transfer was not specifically identified in, or attached to, the notice of appeal, that order was entered before the notice of appeal was filed and is directly related to, and an aspect of, the final order under review. See Fla. R. App. P. 9.110(h); Portis v. Seatruck, Inc., 98 So. 3d 1234, 1235 (Fla. 3d DCA 2012).

factual allegations in an answer or in affirmative defenses beyond their motions to dismiss.

### A. The Helicopter Crash

On November 22, 2012, Gogoleva's husband (Lance Valdez), and appellees Jeffrey Soffer, Paula Riordan, and Daniel Riordan,[2] were four of the five persons in a helicopter traveling from Marsh Harbor to Bakers Bay within the Bahamas. The fifth occupant, David Pearce, was licensed to pilot the helicopter and did so for at least part of the flight. The helicopter had dual controls allowing either the pilot or co-pilot to fly. Soffer occupied the co-pilot's seat during the flight. Although he was licensed and qualified to fly certain types of aircraft, he was not licensed to fly the helicopter involved in the accident. As the helicopter approached a landing site, it crashed into the ground, ultimately killing Valdez and injuring Soffer, the Riordans, and Pearce.

Pearce and Valdez were removed from the wreckage and transported to a hospital, where it was confirmed that Valdez had not survived. Soffer and the Riordans left the crash scene, travelled via boat back to Marsh Harbor, and then flew back to Miami in a friend's aircraft. The amended complaint claims that they left the scene because of Soffer's concern that the Bahamian Police would learn (in

---

[2] Daniel Riordan was a senior executive with Soffer's residential real estate group.

3

the course of their investigation of the crash) that Soffer was actually the pilot at the time of the crash.

The day after the crash, Gogoleva and Valdez's family visited Pearce in the hospital. Pearce told the group Soffer was piloting the helicopter at the time of the crash. Although Pearce was the only licensed and experienced helicopter pilot on the flight, he allowed Soffer to take the controls and attempt to land without doing a "360 Degree Reconnaissance" of the landing site from a high-vantage point.

A few days later, Soffer called Gogoleva to tell her Pearce was lying, and that Pearce was the one who actually lost control of the helicopter as they were landing. Later, Soffer told Gogoleva he had flown for a short period during take-off but assured her that he was not the pilot when the accident occurred. Defendant and appellee Alex Krys[3] and the Riordans also told Gogoleva that Pearce was piloting at the time of the crash.

### B.    Retention of Florida Counsel

Days after the crash, Krys visited Gogoleva and her late husband's brother in the Bahamas. Krys recommended to them that Gogoleva, Soffer, and the Riordans should jointly retain an attorney from Miami, Steven Marks. Marks was and is a partner of a prominent Miami law firm with substantial experience in

---

[3] Alex Krys was also a senior executive with Soffer's real estate group.

aviation cases. Krys told Valdez's brother that any time he or the Soffer companies needed aviation counsel, they used Marks' law firm.

Krys also told Gogoleva that he had spoken with Soffer, who had assured Krys that Pearce was the pilot flying the helicopter before and during the crash. Later, Soffer himself reiterated this assertion to Gogoleva.

Marks and his firm were retained to represent everyone on board the helicopter at the time of the crash except Pearce. Marks did not advise Gogoleva of the conflicts of interest inherent in representing her, Soffer, and the Riordans. Marks also failed to obtain the parties' consent after consultation.[4] While Marks told Gogoleva there was no evidence that anyone other than Pearce was piloting at the time of the crash, an investigator employed by Marks had already informed him that Pearce had admitted Soffer was piloting and that Pearce had initially refused to sign a sworn statement that he was in control of the helicopter when it crashed.

### C. The Insurance Policy and Presuit Settlement

The helicopter was covered by a $2 million insurance policy through North American Elite Insurance Company ("NAE"), which provided benefits for injuries to third parties. The insurance carrier agreed to settle with the potential claimants for the policy limits before a lawsuit was filed, and NAE ultimately paid out $2

---

[4] See R. Regulating Fla. Bar 4-1.7.

million.  At Gogoleva's meeting with Marks, he told her that Soffer and the Riordans had agreed to waive their insurance proceeds so she and her minor children could receive the entire $2 million.  Marks advised NAE in writing that he represented Gogoleva, Soffer, and the Riordans.

Marks drafted a document titled "Full and Final General Mutual Release of All Claims"[5] ("Release"), whereby Gogoleva, Soffer, and the Riordans as "Releasors" were to release the insurers, the corporations which owned and operated the helicopter, and Pearce, as the initially-defined "Releasees," and (purportedly) also each other:[6]

> of and from any and all liability, claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever brought for loss both to person and property, known and unknown, whether such damage or loss be direct, incidental and/or consequential or of any nature whatsoever, and which has resulted, or in the future may develop, from that certain incident relating to the Great Guana Cay, Bahamas, crash of an Aerospatiale AS 355F1, Bahamian registration number C6-APV, on November 22, 2012 ("Accident").

---

[5] The first sentence of text in the document indicates that it is a "Settlement Agreement and Release."

[6] The document provided in section 1.1 that the four Releasors "hereby release and forever discharge each another [sic] and [the helicopter-related entities, the insurance-related entities, and Pearce]."  It is unclear whether "RELEASEES" as defined in that section includes only the parties identified in upper case letters (the eleven persons and entities identified as "Releasees" at the outset of the Release) or also includes "each another," referring to the Releasors, thus contemplating a broader group of 15 releasees rather than the originally-defined group of 11 releasees.

Section 1.2 of the Release also included a provision that the Releasors were releasing any claims they might have against <u>each other</u>—not just any claims against the helicopter owner and operator, the insurers, and Pearce as the parties identified as "Releasees":

> Releasors acknowledge that any and all claims, demands, damages, or loss which Releasors have or may have had against each other and/or Releasees arising from the aforesaid Accident are extinguished by the acceptance of the funds and obligations herein set forth and that the declarations set forth herein are contractual in nature and not mere recitals.

> Section 1.3 again included a phrase that purportedly made not only the "Releasees," but also (purportedly) "each and every other Releasor," a releasee.

Gogoleva was unsure whether to sign the Release and sought the advice of her counsel, Marks. Marks advised her to sign the Release, warning her that delaying in concluding the settlement would not be in her best interests.[7] Marks allegedly also failed to advise Gogoleva that the insurance carrier did not require that she and her children release Soffer or the Riordans. In mid-March 2013, Gogoleva executed the Release, as did the three other Releasors.

---

[7] An inference that can be drawn from these allegations is that Marks knew that NAE might deny coverage and terminate settlement discussions if NAE became aware that an unlicensed person (Soffer) was allowed to pilot the helicopter and was in control at the time of the accident.

### D. The Guardianships

Gogoleva was told that in order to accept any of the insurance proceeds on behalf of her children, she was required to be appointed legal guardian, and the distribution of the proceeds must be overseen by the probate court.[8] In January 2013, three probate cases were filed, one for each of her minor children. Following the execution of the Release, on April 25, 2013, the probate division entered guardianship orders appointing Gogoleva as the legal guardian and probate orders approving the Release and the settlement with NAE.

Of the $2 million in insurance proceeds, $500,000 was paid to Marks' law firm for attorney's fees, and $150,000 per child was placed in the children's guardianship accounts. The balance, $1,050,000, was distributed to Gogoleva.

### E. The State Court Lawsuit

Gogoleva subsequently learned of the conflict in having her sign a settlement releasing the other helicopter occupants, and she received additional information that Soffer was actually the person piloting the helicopter at the time of the crash. She filed a lawsuit against the Riordans, Krys, and Soffer, raising five counts: wrongful death against Soffer, fraudulent inducement against all defendants, conspiracy against all defendants, rescission against Soffer and the Riordans,[9] and declaratory judgment against all defendants. Gogoleva alleged the

---

[8] See § 744.387, Fla. Stat. (2013).

8

defendants lied about who was at the controls when the helicopter crashed and conspired to have her release them from liability.

She also claimed that the defendants misrepresented (1) Marks' role and objectives in arranging the settlement and Release, and (2) the defendants' real reasons for relinquishing any NAE insurance proceeds in exchange for the release of Soffer by Gogoleva. Gogoleva offered to return the $2 million received from NAE; however, NAE reserved its rights and did not require the return of the settlement money.

The defendants moved to dismiss the complaint. Following a hearing, the trial court entered a dismissal order. The court dismissed the amended complaint as an impermissible collateral attack on the guardianship judgments, for failure to state causes of action, and for failure to join indispensable parties. Although the order stated the dismissal was "without prejudice," it also added that should the appellants "wish to proceed, they should go to the probate division and pursuant to Fla. R. Civ. P. 1.540 seek to set aside the final judgments." Gogoleva moved to transfer the case, and the circuit court's administrative judge denied the motion. This appeal ensued.

F.    The Federal Malpractice Lawsuit

---

[9] NAE, though a party to the Release (and payor of the settlement funds), was not named as a defendant. In effect, Gogoleva sought to retain the benefits of the settlement while rescinding the Release only as to Soffer and the Riordans.

9

In November 2014, Gogoleva filed another lawsuit in the United States District Court for the Southern District of Florida, <u>Gogoleva v. Marks</u>, No. 14-24274-Civ-Ryskamp (S.D. Fla. filed Nov. 11, 2014). The lawsuit alleges legal malpractice, breach of fiduciary duty, fraudulent misrepresentation, civil conspiracy, other tort claims, and breach of contract by Marks and his law firm in their representation of Gogoleva and her children regarding their claims arising from the death of Lance Valdez in the 2012 helicopter crash.

Although the federal malpractice suit represents an effort to de-link the claims against Marks from the claims against the four defendants in the present case, there are overlapping allegations regarding Marks' role as a source or recipient of factual representations versus his role as an attorney advising all four defendants in the state case.

The federal court stayed the malpractice action upon motion by Marks and his law firm. That court determined that "[i]t is impossible to know whether the injury that Plaintiffs allege in this case – the inability to pursue an action against Soffer and the Riordans – will occur until Plaintiffs' case against Soffer and the Riordans is concluded."

## II.   Standard of Review

We assume that all factual allegations in the amended complaint are true, and we construe all reasonable inferences from those allegations in favor of the

plaintiff. United Auto. Ins. Co. v. Law Offices of Michael I. Libman, 46 So. 3d 1101, 1103-04 (Fla. 3d DCA 2010). Our review is de novo. Id. at 1103. As in the trial court, we test the legal sufficiency of the causes of action in the amended complaint. We confine our review to the four corners of the complaint and any incorporated attachments. Locker v. United Pharm. Grp., Inc., 46 So. 3d 1126, 1128 (Fla. 1st DCA 2010); Marshall v. Amerisys, Inc., 943 So. 2d 276, 278 (Fla. 3d DCA 2006).

To the extent that the amended complaint seeks rescission and other relief directed against the Release and insurance settlement entered into in March 2013 by (among others) Gogoleva, Soffer, and the Riordans, the amended complaint may affect the settlement-proceeds guardianships opened in the probate division for each of the decedent's three children. We treat those aspects of the amended complaint as an action to set aside the probate orders (approving the settlement and appointing Gogoleva as guardian) under Florida Rule Civil Procedure 1.540(b). See Parker v. Parker, 916 So. 2d 926 (Fla. 4th DCA 2005), affirmed, 950 So. 2d 388 (Fla. 2007).

As detailed in a later section of this opinion, however, upon remand, Gogoleva may invoke a means of tendering or disgorging all settlement proceeds by relying upon her own funds and leaving the guardianships (and each child's existing assets) intact. Alternatively, NAE and its affiliate insurers may decide not

11

to require immediate disgorgement. Because it is premature to assess those possible post-remand developments, we do not separately analyze the order denying a transfer of the amended complaint to the probate division.

III.   Analysis

A.   The Release

The heart of the amended complaint is an attempt to relieve Gogoleva and her children from an unusual feature of the Release. While it is clear that NAE and the other ten "Releasees" would expect releases from Gogoleva and the other three "Releasors" (Soffer and the Riordans) before paying policy limits to the estate and children of the only passenger who died in the helicopter crash, it is far from clear why the Release was purportedly drafted to require Gogoleva to release Soffer and the Riordans (and for each of them to release the other three "Releasors"). The amended complaint asserts that this feature of the Release was not required by NAE and that it is "quite unusual and extraordinary, and is not the norm in the industry."

An irreconcilable problem raised by the amended complaint boils down to this: if there were not claims among Gogoleva, Soffer, and the Riordans, why add the unusual words purporting to expand the number of releasees, thereby creating a conflict with the defined term, "Releasees"? But if any such claims *inter se* were

12

suspected or known, how could a single attorney ethically represent all four Releasors?

Although the public policy of Florida "highly favors settlement agreements among parties and will seek to enforce them whenever possible," <u>Sun Microsystems of Cal., Inc. v. Eng'r & Mfg. Sys., C.A.</u>, 682 So. 2d 219, 220 (Fla. 3d DCA 1996), Florida law does not bar certain fraudulent inducement claims that (1) have not themselves been unequivocally released as part of the settlement agreement, and (2) are based on material misrepresentations to induce settlement, <u>Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.</u>, 761 So. 2d 306 (Fla. 2000).

Settlement agreements and releases are also contracts, and this Release is expressly governed by Florida law, to be interpreted according to well-settled principles of contract law. <u>Muñoz Hnos., S.A. v. Editorial Televisa Int'l., S.A.</u>, 121 So. 3d 100, 103 (Fla. 3d DCA 2013). Two of those principles applicable here are that (1) "[p]arol evidence is admissible to determine the meaning of ambiguous terms through the parties' own statements and conduct," <u>DSL Internet Corp. v. TigerDirect, Inc.</u>, 907 So. 2d 1203, 1205 (Fla. 3d DCA 2005), and (2) ambiguous terms are to be construed against the drafter if evidence of the parties' intent at the time of contract formation is not dispositive, <u>Vargas v. Schweitzer-Ramras</u>, 878 So. 2d 415, 417 (Fla. 3d DCA 2004). "The construction-against-the-drafter

principle is a rule of last resort and is inapplicable when there is evidence of the parties' intent at the time they entered into the contract." DSL Internet Corp., 907 So. 2d at 1205.

In the present case, at the outset, the Release identifies the "Releasees" as NAE, Pearce, and nine other entities and individuals, not including Soffer and the Riordans. But section 1.1 of the Release purportedly releases claims by the Releasors against the Releasees and "each another," resulting "from that certain incident relating to the Great Guana Cay, Bahamas, crash of an Aerospatiale AS 355F1, Bahamian registration number C6-APV, on November 22, 2012 ('Accident')."

Similarly, though section 1.2 purports to include claims by Releasors that they "may have had against each other" as well as those against Releasees, that sentence is qualified in two separate sentences by a limitation to claims "arising from the aforesaid Accident." Section 1.3 purports to cover claims regarding "progressive injuries, the full extent of which are unknown at this time." Section 4.0, "Comprehension of Terms," contains two subsections which shed additional light on the scope of the Release:

> 4.1 Releasors further declare the terms of this settlement have been completely read, fully understood, and voluntarily accepted for the purpose of making a full and final compromise, adjustment and settlement of any and all claims, disputed or otherwise, on account of the above-mentioned incident and for the purpose of concluding

forever any further additional claim <u>against Releasees</u> arising out of the aforesaid incident.

4.2 Releasors have had and have the benefit of an attorney with respect to the review and execution of this Release and are executing this document of the Releasors' own free will and accord.

(Emphasis added).

Again, "Releasees" was defined and used in separate provisions in a manner which did not include Soffer, Gogoleva, or the Riordans. Assuming as we must for purposes of the motion to dismiss, that Marks, Soffer, the Riordans, and Krys sought to induce Gogoleva to release Soffer—even though he was not a "Releasee"—and that Marks was prohibited from representing Soffer and Gogoleva concurrently following the disclosure that Soffer may have been the pilot at the time of the accident, the allegations in Counts I, II, and III of the amended complaint state legally sufficient causes of action.[10] Whether or not the insertion in the Release of two words in section 1.1—"each another"—and three words in sections 1.2 and 2.1—"against each other"—effected a redefinition of "Releasees" and precluded claims against Soffer and the Riordans, is an ambiguity. In the present procedural status, that ambiguity creates an issue of fact to be determined following pretrial discovery and later motions or at trial.

---

[10] We find no merit in the appellees' argument that the wrongful death claim, Count I, failed to state a legally sufficient claim because, under the significant relationships test, "the contacts alleged with The Bahamas outweigh the contacts alleged with Florida." The existing record does not sustain such a conclusion.

15

Whether the Release extends beyond the "Accident" and "above-mentioned incident" to alleged misrepresentations after the helicopter crash—concerning the retention of a single attorney for Gogoleva, Soffer, and the Riordans, and regarding the rationale, scope and effect of the Release itself, for example—is an issue of law. On the face of the amended complaint and incorporated Release,[11] we conclude that the post-accident, alleged fraudulent misrepresentations are not within the scope of the Release. Mazzoni Farms, Inc., 761 So. 2d at 315 (concluding the fraudulent inducement claim did not arise from the "use or application of Benlate," which qualified and limited the scope of the released claims).

### B. Count IV (Rescission) and Count V (Declaratory Judgment)

The trial court dismissed Count IV of the amended complaint, Gogoleva's claim for a rescission of the Release provisions purporting to release Soffer and the Riordans, on the grounds that the Release "is an indivisible contract," that partial rescission is unavailable, and that other parties to the Release who were not joined as defendants are indispensable parties. We affirm the trial court's conclusion on these points. Bethel v. Sec. Nat'l Ins. Co., 949 So. 2d 219 (Fla. 3d DCA 2006); Allman v. Wolfe, 592 So. 2d 1261 (Fla. 2d DCA 1992).

---

[11] Footnote 1 on the first page of the Release states, "This release is not intended to and does not release any claims not specifically referenced herein." (Emphasis added).

16

On remand, Gogoleva is to be permitted to amend to join those additional defendants so that they may protect their interests. Gogoleva has elected in Count IV to rescind the Release, which would require her to restore NAE, Swiss RE (as payor for NAE), and the other Releasees to the status quo ante, to make a sufficient tender to do so, or to obtain their consent to the limited form of rescission or reformation previously sought by Gogoleva. Mazzoni Farms, Inc., 761 So. 2d at 313 ("A prerequisite to rescission is placing the other party in status quo.").

Count V, for declaratory judgment, does not suffer from the same infirmity. The controversy to be determined in that case involves an issue of construction— the ambiguity inherent in the initial, specific identification of the "Releasees" as a defined term, followed by the confusing inclusion of "each another" as purported additional releasees. Did Gogoleva knowingly release her co-Releasors as well as the defined "Releasees," or did she reasonably understand, as the insurers apparently did, that her settlement was only a resolution of claims against the insurers, corporate owner and operators of the helicopter, and licensed pilot (Pearce)?

C.    The Guardianship Orders

In the circuit court, the appellees argued that the probate division guardianship orders relating to the settlement and the management of the $150,000 segregated for the benefit of each of Gogoleva's three minor children were res

judicata and could only be set aside on the grounds specified in Florida Rule of Civil Procedure 1.540(b).  See Lee v. State Farm Mut. Auto. Ins. Co., 303 So. 2d 349, 350 (Fla. 3d DCA 1974) ("[W]e view the above approval of the settlement, not merely an order, but in effect a final judgment.").  The appellees argued successfully in the circuit court that this principle mandated the transfer of part or all of the case to the probate division.

The amended complaint did not seek relief under Rule 1.540(b) specifically, but in substance Gogoleva has alleged a basis for such relief in an "independent action."[12]  The guardianships involve less than a quarter of the settlement proceeds in controversy.  An assessment of Gogoleva's action in now seeking rescission, reformation, or a declaratory judgment regarding the Release—on the narrow question of whether that action is in the best interests of the children—has not yet been sought or ruled upon in the probate division.  The probate division was never presented with, and did not determine, the issues raised by the ambiguity in the Release or the possibility that Soffer may have been in control of the helicopter at the time of the crash.  It is also possible that Gogoleva has other resources with which to tender or disgorge the NAE settlement proceeds, such that the

---

[12] A motion under Rule 1.540(b) could be brought in each of the three guardianship cases, but the Rule also preserves the equitable remedy of an independent action where extrinsic fraud is established.  Parker v. Parker, 950 So. 2d 388, 395 (Fla. 2007).

guardianships can remain in place while the balance of the action is prosecuted (in effect, a "no-lose" for the minor children).

For these reasons, we conclude that it was premature for the circuit court to order a transfer of the case to the probate division as a condition of continuing the prosecution of Gogoleva's civil action. Although the circuit court has established administrative divisions to enhance efficiency, the circuit court is unitary, and the probate division does not have exclusive jurisdiction over all of the claims in Gogoleva's lawsuit. The attendant guardianship issues, which are not predominant in Gogoleva's case below, can be severed and assigned to the probate division upon application by Gogoleva to return the children's proceeds to NAE or to use the children's guardianship funds to pay legal expenses for the continuation of her lawsuit, should such an application be made. See Chanin v. Feigenheimer, 111 So. 3d 292, 293 (Fla. 4th DCA 2013) (reversing an order of dismissal and concluding that claims brought in family division that should have been brought in civil division should be transferred to the correct division).

IV.   Conclusion

Gogoleva's allegations have not been proven. Her claims against Soffer, the Riordans, and Krys are difficult to unpack from her allegations relating to the non-party attorney who allegedly misadvised her. At this procedural point, however, the dismissal order impermissibly constrained further amendment to "any cause of

action not properly brought in the Probate Division," or "any cause of action not contingent upon a final order in a related action brought in the Probate Division."

The order of dismissal is affirmed in part (regarding Count IV) as detailed in this opinion. It is reversed and remanded, however, in all other respects and insofar as it mandated a transfer of part or all of the claims to the probate division. On remand, Gogoleva shall have leave to further amend her amended complaint (superseding the second amended complaint she filed in an abundance of caution after commencing this appeal).

The order denying transfer to the probate division is moot, inasmuch as Gogoleva's entire lawsuit will proceed in the civil division until such time, if any, as she may seek to disburse the guardianship funds for disgorgement or legal expenses, or to terminate the guardianships.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.