## 2400

MR. G, Appellant v. MRS. G, Respondent.

(465 S.E. (2d) 101)

Court of Appeals

306

*Robert A. Bruce, Gatlin Law Firm*, Rock Hill, *for appellant.*

*Connie H. Payne, Ridley, Ridley & Burnette*, Rock Hill, *for respondent.*

Heard Sept. 14, 1995.

Filed Oct. 30, 1995; Reh. Den. Dec. 21, 1995.

GOOLSBY, Judge:

This is an appeal from an order granting a motion to dismiss. Mr. G filed a petition to set aside a child support order based on alleged misrepresentations of paternity made by his former wife, Mrs. G, while they were married. The family court granted Mrs. G's motion to dismiss the petition and awarded her attorney fees. Mr. G appeals. We affirm.

Two and one-half years after being declared in a divorce decree entered on December 18, 1991, to be the father of a little girl born on November 7, 1987,[1] Mr. G seeks an order declar-

---

[1] The December 18, 1991 order granting the parties a divorce found as a fact that "[t]he parties were married on March 28, 1986," "[o]ne child was born to the marriage of the parties," and the child, a daughter, was then three years

ing him not be the child's father, relieving him of having to pay for her support, and ordering Mrs. G to reimburse him for the "support previously paid" by him. His complaint alleges his former wife repeatedly lied to him about his being the little girl's "natural father." Her alleged misrepresentations, he claims, constitute fraud and warrant the setting aside of the finding of paternity made in the divorce decree, an issue he had chosen not to contest during the divorce proceedings. The family court dismissed the complaint, holding principles of *res judicata* and collateral estoppel now preclude Mr. G "from raising the issue of paternity." The family court viewed Mr. G's allegations of fraud as allegations of intrinsic fraud and held intrinsic fraud cannot now be used to set aside the finding in the prior order regarding paternity.

Mr. G argues he is entitled to a hearing on the issue of paternity because the alleged misrepresentations Mrs. G made to him concerning the paternity of the child in question denied him a fair opportunity to litigate the issue and, thus, amounted to extrinsic fraud. We disagree.

The threshold issue in this case is whether the fraud Mr. G alleges amounts to intrinsic or extrinsic fraud. A party may not use intrinsic fraud to mount an attack upon a judgment if the judgment is more than one year old. *See* Rule 60(b)(3), SCRCP (an action to set aside a judgment based on fraud must be brought no later than one year after entry of the judgment);[2] *Evans v. Gunter*, 294 S.C. 525, 366

---

old. Pursuant to a settlement agreement, the family court ordered Mr. G to pay $100 a week for the support of the child and one-half of all medical expenses. It also granted him "reasonable visitation" with the child. The record reflects an attorney represented Mr. G in the divorce action. It also reflects Mr. G admitted he was the child's father in an answer and affidavit file with the court.

[2] The dissent correctly states Federal Rule 60(b)(3), by its express terms, permits judgments to be set aside for fraud, whether the fraud is intrinsic or extrinsic. What the dissent does not mention is that, like its South Carolina counterpart, Federal Rule 60(b)(3) expressly prohibits a party from making a motion to set aside a judgment, order, or proceeding because of fraud later than one year after the judgment, order, or proceeding was taken. If we accept the dissent's argument that there should be no distinction between intrinsic fraud and extrinsic fraud, Mr. G would still not be able to proceed under Rule 60(b)(3), SCRCP, because he waited longer than one year to set aside the prior judgment. It would appear, then, the dissent's reliance on Federal Rule 60(b)(3) would actually hurt Mr. G because the one-year time limitation would bar his action even if it were eventually determined the fraud he alleges is extrinsic fraud.

S.E. (2d) 44 (Ct. App. 1988) (doctrines of *res judicata* and collateral estoppel will not bar a collateral attack on a judgment based on extrinsic fraud).

In *Evans*, the father

> claimed he was induced to sign an affidavit of acceptance waiving his right to "answer, demur or otherwise plead or make an appearance before the court" in the divorce action brought by [the mother]. He claims this was done when he was "sufficiently *intoxicated* to be reckless or incoherent about what he was signing" and this *resulted in his not being notified of or present at the final hearing.*

294 S.C at 526-27, 366 S.E. (2d) at 45 (emphasis added). We held the fraud alleged in *Evans* to be "extrinsic" fraud, "extrinsic" fraud being defined as "fraud[ ] . . . *collateral or external to the matter tried. . . ." Id.* at 529, 366 S.E. (2d) at 46 (emphasis added). The fraud there alleged was extrinsic because it was collateral or external to the issue of paternity, a matter determined by the family court in the prior divorce action, and because it deprived the other party of his right to a fair opportunity to present his case to the court. *See City of San Francisco v. Cartagena,* 35 Cal. App. (4th) 1061, 41 Cal. Rptr. (2d) 797, 801 (1995) ("The essence of extrinsic fraud is one party's preventing the other from having his day in court.").

"[F]raud is intrinsic and not a valid ground for setting aside a judgment when [a] party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary but has unreasonably neglected to do so." *City of San Francisco,* 41 Cal. Rptr. (2d) at 801. A claim of intrinsic fraud "goes to the merits of the prior proceeding which the moving party should have guarded against at the time." *Id.; see Evans,* 294 S.C. at 529, 366 S.E. (2d) at 46 (quoting H. LIGHTSEY & J. FLANAGAN, *SOUTH CAROLINA CIVIL PROCEDURE* at 405 (2d ed. 1985), " ' Relief is granted for extrinsic but not intrinsic fraud on the theory that the latter deceptions should be discovered during the litigation itself, and to permit such relief undermines the stability of all judgment.' ").

Here, the alleged fraud, Mrs. G's lying to Mr. G about the paternity of the child in controversy, is intrinsic, not extrinsic,

because the alleged misrepresentation relates directly, not collaterally, to a matter determined in the former proceedings, namely the question of the child's paternity. Mr. G alleged nothing to suggest he did not have notice of the prior divorce action as well as an opportunity in that action both to offer the view that he was not the father of the child and to protect himself against any fraud practiced upon him by Mrs. G regarding the paternity of the child. Mr. G, however, elected not to take advantage of that opportunity when he did not challenge Mrs. G's allegation that the child was a product of their marriage. Inasmuch as he was afforded his day in court and exercised his discretion whether to admit or deny the allegation of paternity by admitting the allegation, it should not be the business of the court now to investigate his reasons for his action or to correct any mistakes he made in exercising that discretion.[3]

Moreover, a holding by this court that Mr. G has alleged extrinsic fraud would undermine the finality of virtually every paternity and child support order in this state, whether the order results from a paternity case instituted by the Department of Social Services or someone else or from a divorce case. Any father would be free to seek another opportunity to challenge a child support order by simply saying, as did Mr. G. here, he was induced not to litigate the issues of paternity and child support on the basis that he was not the father of the child because the mother lied to him when she told him he was the child's father and he believed her.

Prior child support orders would not be the only prior orders vulnerable to attack if we were to find Mr. G has alleged extrinsic fraud. Prior spousal support orders and orders effecting a distribution of marital assets could likewise be chal-

[3] The dissent relies on the majority opinion in *Arnold v. Arnold*, 285 S.C. 296, 328 S.E. (2d) 924 (Ct. App. 1985) to support the proposition that the fraud Mr. G has alleged is extrinsic fraud. In *Arnold*, however, the reason the majority reversed the family court and allowed Mr. Arnold to proceed on his counterclaim to vacate a prior order establishing him as the father of a child born during the parties' marriage was that the family court failed to make any ruling whatsoever on Mr. Arnold's allegations concerning fraud, basing its dismissal solely on the premise that the prior litigation barred a challenge to the paternity order. Moreover, in a footnote, the majority "point[s] out that the husband's counterclaim appears to be deficient in that it does not allege the requisite type of fraud to support a vacation of the [prior] order." *Id.* at 300, 328 S.E. (2d) at 925.

lenged where a spouse alleges the other spouse lied about his or her fidelity or about the existence of assets.

> Given the limited authority under Rule 60(b)(3), ■ SCRCP, for a South Carolina court to grant relief from a judgment in a divorce decree finalized for more than

a year, it is clear that the overriding policy in South Carolina, as that in Maryland, "emphasizes that once a case is decided, it shall remain decided with certain very narrow exceptions." *Tandra S. v. Tyrone W.*, 336 Md. 303, 648 A.(2d) 439, 449 (1994).[4]

We therefore uphold the family court's decision to dismiss the complaint on the basis of *res judicata*, the complaint's allegations themselves making that result self-evident because the fraud therein alleged, at most, constitutes intrinsic fraud. *Evans*, 294 S.C. at 529, 366 S.E. (2d) at 46; *Anonymous v. Anonymous*, 473 So. (2d) 502 (Ala. Civ. App. 1984); *see Vinson v. Vinson*, 725 S.W. (2d) 121, 122 (Mo. Ct. App. 1987) (the doctrine of collateral estoppel barred a former husband from relitigating the issue of a child's paternity and the former husband was not entitled to have the prior decree set aside on the ground of extrinsic fraud where the wife had "repeatedly assured him that he was the father" of the child); *Brown v. Superior Court*, 98 Cal. App. (3d) 633, 159 Cal. Rptr. 604, 606 (1979) (where the father admitted paternity during a prior divorce proceeding and the mother later told others that he was not the child's father, he was not entitled to a blood test to assist him in demonstrating extrinsic fraud 10 years later because the blood tests were "directed to the ultimate issue, paternity"); *cf. Eichman v. Eichman*, 285 S.C. 378, 329 S.E. (2d) 764 (1985) (the doctrines of *res judicata* and collateral estoppel barred a husband from relitigating the issue of a child's paternity in a divorce proceeding when the husband had been found to be the father of the child in a previous family court proceeding). The fraud alleged in the complaint, being intrinsic fraud, may not serve, therefore, as a basis for relieving Mr. G from the prior judgment, a judgment more than one year

---

[4] The dissent argues Mr. G "may be entitled to prevail under Rule 60(b)(5), SCRCP"; however, because the family court never ruled on this issue, we do not consider it on appeal. *See Talley v. South Carolina Higher Educ. Grants Comm.*, 289 S.C. 483, 347 S.E. (2d) 99 (1986) (an issue must be both raised to and ruled on by the trial court before it can be considered on appeal).

old, and for taking away from a little girl the only father she has ever known.

We find no merit to Mr. G's argument that the family court improperly converted the dismissal hearing to the summary judgment motion without giving him the opportunity to present all pertinent material. Even assuming the family court made improper findings of fact and Mr. G preserved this issue for appeal, the only allegedly improper finding of fact germane to this appeal is that pertaining to Mr. G's opportunity to litigate paternity. The family court based that finding of fact on its determination that the fraud Mr. G alleged was intrinsic and therefore did not constitute a basis for his assertion that he was unable to have a fair submission of the purported controversy.

Having affirmed the family court's dismissal of Mr. G's complaint, we likewise affirm the award of attorney fees to Mrs. G.

Affirmed.

HOWELL, C.J., concurs.

HEARN, J., dissents in a separate opinion.

HEARN, Judge (dissenting):

Respectfully, I dissent. I would reverse and hold that the trial judge erred in dismissing Mr. G's complaint.

Mr. G was denied even the opportunity to develop facts to support his fraud allegations. It is well settled that a decision to grant a Rule 12(b)(6) motion to dismiss cannot be sustained if facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on *any theory* of the case, even though different from that on which the plaintiff may have supposed himself entitled to recover. *Evans v. Gunter,* 294 S.C. 525, 366 S.E. (2d) 44 (Ct. App. 1988); *Springfield v. Williams Plumbing Supply Co.,* 249 S.C. 130, 153 S.E. (2d) 184 (1967). The question is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief. I would hold the allegations of the complaint are sufficient to constitute extrinsic fraud; moreover, Mr. G also may be entitled to prevail under Rule 60(b)(5), SCRCP.

## I.

In my view, the facts alleged by Mr. G state a cause of action for relief from judgment based upon fraud. Although I believe the extrinsic-intrinsic distinction should be discarded because of its propensity for confusion and inequity, the allegations here are sufficient to constitute extrinsic fraud, particularly in view of the prior decision of this Court in *Arnold v. Arnold,* 285 S.C. 296, 328 S.E. (2d) 924 (Ct. App. 1985).

In *Arnold,* the husband admittedly was on notice prior to consenting to the order assailed that he might not be the child's father, due to a letter he received from the child's mother. He dismissed the letter as being motivated by his wife's anger and filed a pleading seeking relief from the judgment based on fraud only after he discovered he was sterile. Therefore, Mr. Arnold, unlike Mr. G, clearly had the opportunity in the prior action to contest the paternity issue and made a conscious decision not to do so. Nevertheless, the majority in *Arnold* reversed the grant of summary judgment in favor of the wife, and allowed the husband the opportunity to prove his case. The South Carolina Supreme Court denied certiorari in *Arnold* on August 28, 1985.[1]

Surely Mr. G is even more deserving of relief than the husband in *Arnold.* According to his complaint, his wife misrepresented the fact of his daughter's paternity to him, thereby preventing him from having a fair submission of the controversy. Based upon this misrepresentation, he agreed to pay $100.00 per week for the child's support. He alleged he only learned the truth some 2 1/2 years later when his former wife admitted to him that he was not the child's father.

"Extrinsic fraud" has been variously defined by the courts. The dissenting opinion in *Arnold* relies on the definition formulated by the Arizona Court that extrinsic fraud is "some intentional act or conduct by which the prevailing party has

---

[1] The majority relies upon *Eichman v. Eichman,* 285 S.C. 378, 329 S.E. (2d) 764 (1985), decided by the Supreme Court some three months prior to its denial of certiorari in *Arnold.* There is no indication the complaint in *Eichman* contained allegations of fraud; therefore, the majority's reliance upon *Eichman* is wholly misplaced. The timing of the *Eichman* decision and the Supreme Court's denial of certiorari in *Arnold* is at least some indication that the Court perceived no conflict between the two decisions and that *Eichman's* reasoning does not extend to actions to set aside a judgment based upon fraud.

prevented the unsuccessful party from having a fair submission of the controversy." *Bates v. Bates*, 1 Ariz. App. 165, 169, 400 P. (2d) 593, 597 (1965). Under this definition, Ms. G's alleged conduct is sufficient to constitute extrinsic fraud.

In *Bates*, the wife brought an action against her former husband to recover the value of real estate which she claimed had been purchased with community funds and concealed by the husband at the time of the divorce. Like Mr. G, Ms. Bates entered into an agreement with her husband concerning property division unaware that the disputed piece of property existed. Many years later upon discovering the truth, Ms. Bates sought to set aside the decree based upon extrinsic fraud. The Arizona Court of Appeals held her allegations of concealment of a material fact at the time of the divorce was sufficient to state a valid claim for relief. Quoting from 30A Am. Jur. § 804, at 736, the court stated that "the concealment of material facts may form the basis of an action inequity for extrinsic fraud." *Bates*, at 167, 400 P. (2d) at 595. Moreover, extrinsic fraud has been defined as "fraud or deception practiced upon a party by its adversary which has prevented the party from trying its case or having a real contest of the subject matter of the suit in court." 47 Am. Jur. (2d) § 832, at 309-310. In my view, the alleged conduct of Ms. G in concealing the material fact of her child's paternity, thereby inducing her husband to enter into an agreement on that issue, is sufficient to qualify as extrinsic fraud.

The public policy ramifications of the majority's decision are far-reaching. The holding that the allegations of fraud contained in Mr. G's complaint cannot serve as the basis for attacking a judgment may be interpreted by the Family Court bar to require every male litigant in a domestic proceeding to request and secure a blood test.[2] Additionally, the decision may very well encourage female litigants to misrepresent the issue of paternity because the majority opinion denies any meaningful recourse to those injured by the misrepresentation.

Moreover, it may be time to reexamine the viability of the extrinsic-intrinsic distinction. Certainly, Rule 60(b) speaks only in terms of "fraud" without distinguishing between "ex-

---

[2] It is hard to imagine how this procedure will further the State's goal of reconciling marriages and preserving the parent-child relationship.

trinsic" or "intrinsic." The extrinsic-intrinsic distinction was created by the United States Supreme Court in 1878 in *United States v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93 (1978). There, the Court recognized that relief could be granted for "frauds, extrinsic or collateral, to the matter tried by the first court," such as "where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff." *Id.* at 65-66. However, the *Throckmorton* Court noted relief could not be given where the judgment was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment under attack. *Id.* at 66. The justification offered by the *Throckmorton* Court for denying relief on a judgment based on perjured testimony was the perceived mischief of retrying cases. *United States v. Throckmorton*, 98 U.S. at 68-69.

The ostensible rationale behind the *Throckmorton* dichotomy is that intrinsic fraud is discoverable through the ordinary processes of the trial itself but that extrinsic fraud never enters the judgment. *Lockwood v. Bowles*, 46 F.R.D. 625 (D.C.C. 1969). This distinction has been thoroughly criticized by courts and commentators as "difficult to understand and apply." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2861 (1973).[3]

In refusing to follow this short-sighted logic, one court has said: "We believe truth is more important than the trouble it takes to get it." *Publicker v. Shallcross*, 196 F. (2d) 949, 952 (C.C.A.3 1939). The same sentiment was even more cogently expressed by Judge (later Justice) Brennan for the New Jersey Supreme Court:

> Nevertheless, upon principle, we hold that relief for fraud upon the court may be allowed under our rule whether the fraud charged is denominated intrinsic or extrinsic. The notion that repeated retrials of cases may be ex-

---

[3] Even the Supreme Court appeared to abandon the *Throckmorton* standard thirteen years later in *Marshall v. Holmes*, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891), where it held:

[A]ny fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, . . . but was prevented by fraud or accident, unmixed with any fault or negligence in himself . . . will justify any application to a court of chancery. *Id.*, at 596, 12 S.Ct. at 64.

pected to follow the setting aside of judgments rendered on false testimony will not withstand critical analysis. . . . We prefer to follow the equity of the matter and to take away an unjust judgment obtained by vital perjury when the injustice and inequity of allowing it to stand are made evident.

*Shammas v. Shammas*, 9 N.J. 321, 329-330, 88 A. (2d) 204, 208-209 (1952).[4]

With the adoption of Federal Rule 60(b)(3), the *Throckmorton* distinction between extrinsic and intrinsic fraud was eliminated in the Federal Courts. As stated by Wright and Miller:

Rule 60(b)(3), by its express terms, permits judgments to be set aside for fraud "whether heretofore denominated intrinsic or extrinsic." It thus put to an end, at least when relief is sought by motion, a very troublesome and unsound distinction.

11 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2861 (1973).

Moreover, in commenting on Rule 60(b)(3), Wright and Miller note that "[t]he rule reaches all fraud, and rejects the confusing distinction between extrinsic and intrinsic fraud." *Id.* at § 2860.[5] There is no reason to suggest it should survive in an independent action, particularly in view of subsection (5) of Rule 60(b) which extends relief to actions brought outside the one-year period. As one commentator has noted, since there is little real basis for the distinction between extrinsic and intrinsic fraud, it would be unfortunate if the "ancient learning on this point were to be resurrected as a limitation on independent actions now that it is decently buried with regard to motions." Note, *Attacking Fraudulently Obtained Judgments in the Federal Courts*, 48 Iowa L. Rev. 398, 405-409 (1963).

---

[4] One commentator has noted that the perpetuation of the extrinsic-intrinsic distinction has led the federal courts into "a thicket of inconsistency, because the distinction is unnecessary, often irrational, and potentially productive of injustices not outweighed by the interests of finality." Comment, *Rule 60(b): Survey and Proposal for General Reform*, 60 Cal.L.Rev. 531, 542 (1972).

[5] Indeed the Advisory Committee Note to the 1948 amendment of Rule 60(b) said in part: "Fraud, whether intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party are express grounds for relief by motion under amended subdivision (b)."

## II.

Mr. G's complaint also states a claim sufficient to withstand Rule 12(b)(6) dismissal under Rule 60(b)(5) which permits relief where "it is no longer equitable that the judgment should have prospective application." Relying on his wife's representation of paternity, Mr. G agreed to pay $100.00 per week in child support. Over the remaining majority of the child's life, assuming no further increases in support, Mr. G will be required to pay in excess of $50,000.00 to satisfy a judgment which he alleges was fraudulently obtained. If he fails to make these payments, but is found by the Family Court to be able to do so, he may well be incarcerated. See S.C. Code Ann. § 20-7-1350 (Supp. 1994). It is difficult to discern the equity to Mr. G under such circumstances or to conceive of a factual situation more deserving of Rule 60(b)(5) relief.

In *Evans v. Gunter*, this Court noted that Rule 60(b)(5) is based on the historical power of a court of equity to modify its decree in light of subsequent conditions, citing 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2861 (1973), and Harry M. Lightsey & James F. Flanagan, *South Carolina Civil Procedure*, 407 (2nd Ed. 1985). There, faced with allegations similar to those raised here, this court held it would no longer be equitable for the judgment to have prospective application. The majority opinion thus represents a serious departure from both *Arnold* and *Evans*.

I would reverse the trial judge's decision and permit Mr. G the opportunity to prove his case. I would also reverse the award of attorney's fees. To require Mr. G to pay attorney's fees for the person who allegedly misrepresented his paternity offends every principle of justice and equity.