662 S.E.2d 413

**MR. T, Appellant,**

v.

**MS. T and Michael Alston, Respondents.**

**In re S.N.T and D.T.T.**

**No. 4369.**

Court of Appeals of South Carolina.

Heard Jan. 8, 2008.
Decided April 15, 2008.
Rehearing Denied June 26, 2008.

Richard C. Jones and Patrick M. Killen, both of Sumter, for Appellant.

Michael Alston, of Washington, and Ryan Alexander McLeod, of Sumter, for Respondent.

PIEPER, J.

Mr. T appeals the family court's dismissal of his complaint to set aside a prior child support order and to determine paternity of two children born during his marriage with Ms. T.[1] We reverse and remand for an evidentiary hearing and development of the record on the matter.

---

1. We have omitted the names of the parents and children from our opinion.

130

## FACTS

The appellant, Mr. T, and the respondent, Ms. T, were married on May 9, 1986 in South Carolina. Subsequently Mr. T filed a complaint with the Sumter County Family Court seeking a divorce from Ms. T and seeking joint, legal custody of the parties' minor children. In paragraph five (5) of Mr. T's complaint, he alleged that "two children have been born of this marriage." In paragraph six (6) of his complaint, Mr. T alleged that he was entitled to joint, legal custody of the children. Ms. T then filed an answer and counterclaim admitting the allegations contained in paragraph five (5) of Mr. T's complaint and denying that he was entitled to joint, legal custody of their children.

The parties subsequently entered into an agreement which was placed in the record. The agreement specified that the parties agreed that Ms. T would have sole custody of the parties' two minor children. The agreement of the parties provided for reasonable and liberal visitation by Mr. T and it also provided for the payment of child support by Mr. T. He agreed to pay child support for the children in the amount of $1,219.69 each month.

The parties submitted their agreement to the Sumter County Family Court for approval and the court approved their agreement. The couple was divorced by Final Divorce Decree filed on October 18, 1999, which specifically set forth and incorporated the parties' agreement. Pursuant to that decree, the court specifically found that "[t]wo children have been born of this marriage." No appeal was taken from this order.

Mr. T filed the present lawsuit alleging that from the time of the birth of the children, through the time of the divorce and until recent months, he was under the false and mistaken belief that these children were his biological children. Mr. T also alleged that during a summer visit in 2005, he noticed that his son's physical appearance was similar to that of a man by the name of Michael Alston (Alston). Respondent Alston was named as a party to the present lawsuit. Mr. T also attached to his original complaint a DNA paternity test suggesting that he was not the biological parent of the children.

At the temporary hearing on March 10, 2006, counsel for Ms. T asked the court to continue the matter or to dismiss the

complaint based on the court's lack of in personam jurisdiction over her and the court's lack of subject matter jurisdiction based on res judicata/collateral estoppel grounds. Alston also joined in the relief requested by Ms. T alleging he was a resident of Washington D.C. The Honorable W. Jeffery Young took Ms. T's motion to dismiss under advisement and allowed the parties thirty (30) days within which to prepare and submit briefs to the court regarding Ms. T's oral motion to dismiss.

On March 22, 2006, Mr. T amended his pleadings to allege fraud on the part of Ms. T. She then filed her answer and counterclaim to the amended complaint on April 19, 2006. In her answer and counterclaim, Ms. T objected to the court considering the paternity test which was attached to Mr. T's pleadings.

Thereafter, the court issued its order dismissing the complaint with prejudice based upon the prior divorce decree stating that there was "a clear finding of paternity" and the court lacked subject matter jurisdiction based on res judicata/collateral estoppel. The court's order of dismissal was filed on June 1, 2006. Pursuant to a motion for reconsideration, a hearing was held on September 6, 2006; that motion was denied.[2]

On September 28, 2006, Mr. T filed his Notice of Appeal. The appeal was dismissed on November 9, 2006 and was reinstated on December 21, 2006. On or about March 1, 2006, Mr. T filed a Motion to Argue against Precedent with this court which was subsequently denied.[3]

## STANDARD OF REVIEW

In appeals from the family court, the appellate court has the authority to correct errors of law and to find facts in

---

2. The court never addressed the arguments that it lacked in personam jurisdiction over the parties.

3. This court denied Mr. T's motion to argue against published precedent for two reasons. First, this court, sitting as a three judge panel, lacks the authority to rule against prior published precedent without en banc review. Second, as discussed herein, the case at hand is distinguishable from the precedent set by *Mr. G v. Mrs. G*, 320 S.C. 305, 465 S.E.2d 101 (Ct.App.1995), and the present case on appeal can be resolved without review of the precedent in *Mr. G*.

accordance with its own view of the preponderance of the evidence. *Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005); *Miller v. Miller,* 299 S.C. 307, 311, 384 S.E.2d 715, 717 (1989). However, this broad scope of review does not require this court to disregard the family court's findings. *Lacke v. Lacke,* 362 S.C. 302, 307, 608 S.E.2d 147, 149–50 (Ct.App.2005). The issue presented on appeal is purely a question of law.

## LAW/ANALYSIS

■■ Mr. T claims that the family court erred in granting the respondents' motion to dismiss for lack of subject matter jurisdiction based on res judicata/collateral estoppel grounds. The procedural posture of this case is critical to this court's analysis. Mr. T has filed an independent action challenging the original decree on various grounds. The first cause of action in Mr. T's amended complaint brings the underlying paternity action pursuant to S.C.Code Ann. § 20–7–952 (1985). In his second cause of action, he seeks relief on the ground that prospective enforcement of the existing decree would be inequitable and it should therefore be set aside pursuant to Rule 60(b)(5), SCRCP. Finally, in his third cause of action, he seeks relief generally under Rule 60(b) which the court may liberally construe as either a motion or an independent action.[4] Some of the causes of action suggest more than one ground of relief but throughout his pleading, he asserts various allegations of inequity and fraud or misrepresentation. In any event, where the interests of minors or incompetents are involved, "[p]rocedural rules are subservient to the court's duty to zealously guard the rights of minors. Where the rights and best interests of a minor child are concerned, the court may appropriately raise, *ex mero motu,* issues not raised by the parties." *S.C. Dept. of Soc. Servs., v. Roe,* 371 S.C. 450, 463, 639 S.E.2d 165, 172 (Ct.App.2006) (citations omitted).

The family court judge found that the original divorce decree made a clear finding of paternity. The court cites to paragraph four of the divorce decree which states that "[t]wo children have been born to this marriage." The family court

---

4. *See Banker's Mortg. Co. v. U.S.,* 423 F.2d 73, 77 (5th Cir.1970); *U.S. v. Buck,* 281 F.3d 1336, 1342 (10th Cir.2002).

judge then concluded that the court "has no jurisdiction since the action is barred by res judicata/collateral estoppel."

However, the application of res judicata and collateral estoppel principles are not matters of subject matter jurisdiction. Subject matter jurisdiction refers to a court's power to hear and determine cases of the general class or category to which proceedings in question belong. *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994) (citation omitted). Preclusive concepts such as res judicata and collateral estoppel are not jurisdictional matters. *Weston v. Margaret J. Weston Med. Ctr.*, 2007 WL 2750216 at *4 n. 6 (D.S.C. Sept.20, 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). While the family court order referenced jurisdiction, we believe the further reference to preclusion principles suggests the court dismissed the case under Rule 12(b)(6), SCRCP.

In doing so, the family court judge relied on the factual similarities between the case at hand and this court's decision in *Mr. G v. Mrs. G*, 320 S.C. 305, 465 S.E.2d 101 (Ct.App. 1995). However, the case at hand is procedurally distinguishable from *Mr. G*. Here, Mr. T not only filed an independent action challenging the original decree, but also specifically seeks relief under Rule 60(b)(5); in *Mr. G*, the court specifically noted that the family court never ruled on the Rule 60(b)(5) issue and declined to consider it on appeal. Accordingly, sitting as a panel, we do not need to reconsider the precedent set by *Mr. G* in order to determine this appeal.[5]

---

5. Further, we note the South Carolina Supreme Court has adopted the intrinsic/extrinsic fraud distinction in an independent action context. However, that case dealt with the issue of fraud and not the other aspects of Rule 60 or an independent action based on special circumstances outside the context of fraud. *See Chewning v. Ford Motor Co.*, 354 S.C. 72, 579 S.E.2d 605 (2003). Moreover, in *Arnold v. Arnold*, 285 S.C. 296, 328 S.E.2d 924 (Ct.App.1985), the court reversed an order of summary judgment as to a subsequent attack on paternity because the question of fraud had not been adequately addressed. However, Judge Goolsby, in dissent, opined that Arnold failed to demonstrate any facts, which if proved, would establish extrinsic fraud. We only read Arnold as being procedural in nature although recognizing on remand in that case the need to demonstrate the requisite fraud necessary for relief since fraud was the issue presented.

Notwithstanding the intrinsic/extrinsic fraud analysis of *Mr. G*, the presence of extrinsic fraud is not the only mechanism by which a prior judgment can be set aside. Rule 60(b), SCRCP states, in part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud, misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5), the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, *or it is no longer equitable that the judgment should have prospective application.* The *motion shall be made within a reasonable time,* and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, "or" to set aside a judgment for fraud upon the court.* During the pendency of an appeal, leave to make the motion must be obtained from the appellate court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

(emphasis added). The language of Rule 60 specifically excludes motions under Rule 60(b)(4) and (5) from the one year limitation within which prior judgments may be attacked and indicates these motions must be brought within a reasonable time. Furthermore, Rule 60(b)(5) allows the court to enter-

tain motions to relieve a party from a prior judgment based on the competing equities of the circumstances that establish the judgment's prospective application is no longer equitable.

■ Finally, aside from the five subsections mentioned above, Rule 60 explicitly indicates that it in no way limits the court's power to entertain an independent action "to relieve a party from a judgment ... 'or' to set aside a judgment for fraud upon the court." (emphasis added). While the most common ground for an independent action is for fraud, the rule is not restricted to only that ground. The structure of this rule and its use of the word "or" indicate to this court two potential independent action attacks on a judgment, order or proceeding: 1) one based on such rare, special, exceptional or unusual circumstances that may warrant equitable relief, including accident or mistake or 2) one based in equity for fraud upon the court. *See,* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE. & PROCEDURE § 2868 (2d ed.1995).

■ The Eighth Circuit characterized the independent action as follows:

> The indispensable elements of such a cause of action are 1) a judgment which ought not, in equity and good conscience, to be enforced; 2) a good defense to the alleged cause of action on which the judgment is founded; 3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; 4) the absence of fault or negligence on the part of the defendant; and 5) the absence of any adequate remedy at law.

*Nat'l Sur. Co. v. State Bank of Humboldt,* 120 F. 593 (8th Cir.1903). In essence, the rule merely reflects many of the considerations attendant to an equitable analysis. Further, since the independent action referenced in the rule is one in equity, the court may consider equitable defenses such as laches, unclean hands, and whether an adequate legal remedy exists. The court may also consider other policy doctrines such as *parens patriae;* we do not suggest this list is exclusive. However, what we do suggest is that equity only intervenes when the circumstances so require, but to do so, a court must be aware of all of the circumstances before it acts.

Thus, the parties must be allowed to develop the record accordingly.

We find it necessary to review some of the cases prior to this date to test how they reflect these equitable principles. In *Eichman v. Eichman*, 285 S.C. 378, 329 S.E.2d 764 (1985), the husband was barred from asserting that he was not the father of the child. There were no allegations of fraud; however, based on the elements cited above, it can be argued that the husband was at fault since there was an indication the child was born before husband was married and he arguably could have explored the matter fully based on that knowledge but intentionally chose not do so in hopes of reconciliation. Thus, his own voluntary decisions could reasonably preclude his request for relief. In *Evans v. Gunter*, 294 S.C. 525, 366 S.E.2d 44 (Ct.App.1988), the former husband sought to collaterally attack a child support decree and filed a Rule 60 motion based on evidence that he could not father a child throughout his life. The case was dismissed for failure to state a claim but that order was reversed because acts of the wife inducing him to sign a document denied husband the opportunity to be heard. Similarly, in Arnold, discussed herein, the trial court determined that the husband was estopped to contest paternity. However, the husband alleged fraud and the court reversed finding that the trial court made no determination whether there existed a genuine issue of fact regarding fraud since res judicata would not preclude vacation of the order if the requisite type of fraud was present. The court also indicated that for collateral estoppel purposes, there was no contention that the parties actually litigated the question of paternity.

■ Therefore, even if we were to assume based on precedent that any fraud alleged is intrinsic in nature, the judgment and concurrent finding of paternity is nonetheless vulnerable to attack outside of the fraud context under Rule 60(b)(5) and through an independent action if the appropriate circumstances are present.[6] If the family court had reached this

---

6. We note that in *Ray v. Ray*, 374 S.C. 79, 82, 647 S.E.2d 237, 242 (2007), Justice Pleicones, in his dissent, recognized the possibility of some exceptional circumstance involving intrinsic fraud which would justify equitable relief. He did not provide an example but such a

stage of the analysis, it would have been necessary for it to consider "whether" res judicata or collateral estoppel should apply based on the circumstances presented. However, the parties were never given an opportunity to develop the record on these issues because the court merely determined it lacked jurisdiction based on those same preclusion principles without giving consideration to any possible exceptions to these rules. We understand the family court's concern, as well as hesitation, since there is little guidance in our case law on the various exceptions to preclusion principles.

As indicated, these preclusion concepts have been subjected to exceptions to their application. This court, in *Pye v. Aycock*, 325 S.C. 426, 437–38, 480 S.E.2d 455, 460–61 (Ct.App. 1997), adopted the Restatement (Second) of Judgments § 28 (1982), which states in pertinent part:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

The mere presence of the various exceptions, many of which are founded in equity principles, warrants affording the parties the opportunity to develop the record. As noted in the Restatement provision adopted in *Pye,* the adverse impact upon the interests of persons not parties to the original litigation may also be considered. Here, neither the alleged

statement safeguards the broad inherent power of a court to effectuate equity under the proper circumstances. However, that dissent is not controlling as to our ruling herein.

biological father, nor the children, were parties to the original litigation.

As articulately stated in *People v. Plevy*, 52 N.Y.2d 58, 64, 436 N.Y.S.2d 224, 417 N.E.2d 518, 521 (1980) (citation omitted), preclusive doctrines are "not to be rigidly or mechanically applied and must on occasion, yield to more fundamental concerns."[7] More precisely, the application of res judicata and collateral estoppel "may be precluded where unfairness or injustice results, or public policy requires it." *Nelson v. QHG*, 354 S.C. 290, 315, 580 S.E.2d 171, 184 (Ct.App.2003) *rev'd in part*, 362 S.C. 421, 608 S.E.2d 855 (2005) citing *State v. Bacote*, 331 S.C. 328, 331, 503 S.E.2d 161, 163 (1998); *Carrigg v. Cannon*, 347 S.C. 75, 552 S.E.2d 767 (Ct.App.2001).

Public policy suggests that "South Carolina, as *parens patriae*, protects and safeguards the welfare of its children. Family Court is vested with the exclusive jurisdiction to ensure that, in all matters concerning a child, the best interest of the child is the paramount consideration." *Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992) (citation omitted). "This principle is founded upon the state's duty to protect those of its citizens who are unable because of infancy to take care of themselves, and on the right of the child, as citizen and ward, to the state's protection." *Cook v. Cobb*, 271 S.C. 136, 145, 245 S.E.2d 612, 617 (1978) (citation omitted). Nothing in the record herein suggests that the interests of the children were ever considered.[8]

An accurate determination of paternity not only significantly affects the interests of the parents or alleged parents of the children, but also significantly affects the interests of the children both now and in the future. A conclusion that

---

7. Although this concept originated in the context of collateral estoppel, South Carolina courts have applied the concept equally to res judicata. *See State v. Bacote*, 331 S.C. 328, 331, 503 S.E.2d 161, 163 (1998); *Carrigg v. Cannon*, 347 S.C. 75, 81, 552 S.E.2d 767, 770 (Ct.App.2001); *Nelson v. QHG*, 354 S.C. 290, 315, 580 S.E.2d 171, 184 (Ct.App.2003) *rev'd in part*, 362 S.C. 421, 608 S.E.2d 855 (2005).

8. Mr. T requested the appointment of a GAL in his complaint; however, the record does not indicate that a GAL was ever appointed to represent the interests of the children.

parentage was adjudicated in the first proceeding based on principles of finality is indeed troubling, especially when considering the fundamental interests involved herein. Significant changes in testing procedures, including DNA analysis, have been developed since many of these principles were adopted and these tests allow more certainty in the determination of parentage. Moreover, knowledge of a biological parent is important for purposes of medical history, genetic defects, inheritance rights and other matters; all of these considerations are best left to the family court.

Nothing herein should be construed as a finding by this court as to a bright line test in which to consider the issues presented. We specifically decline to do so in the absence of a well-developed record. We state only that these decisions cannot be made in a vacuum based on strict notions of finality or upon *assumption and speculation* about the best interests of the children. That decision is properly one for the learned judges of the family court after balancing the interests of all parties involved, including the children, as well as any equitable circumstances presented that would warrant equitable relief if the court determines, after development of the record, that equitable relief is appropriate.

## CONCLUSION

Having considered the record on appeal, we hereby reverse the order of dismissal for lack of jurisdiction and remand the matter so that the family court may allow the parties to fully develop the record on the issues presented consistent with our decision. Once developed, the court must adequately balance the competing interests of all those involved as well as any equitable circumstances presented in the case and evaluate the applicability of the various exceptions to res judicata and collateral estoppel.[9] While this court acknowledges the policy consideration which thrives for finality of judgments, the equities of a case may be just as significant in overriding such finality. This especially rings true when the issue before the

9. Because the family court did not address any issues as to in personam jurisdiction, these issues are not properly preserved for our review but the family court may address these matters on remand if raised by the parties.

court is a determination of something so fundamental as the identity of a biological parent. Further, because the children have an identifiable interest in a determination of parentage and the proceedings herein, the court on remand should consider whether the appointment of a guardian ad litem is appropriate.[10]

**REVERSED AND REMANDED.**

HUFF, J., and GOOLSBY, A.J., concur.

---

**10.** *See also* S.C.Code Ann. § 20–7–952(E) (1985).