803 S.E.2d 469

**Michael ASHBURN, Appellant,**

v.

**April ROGERS and South Carolina Department of Social Services Child Support Division, Respondents.**

Appellate Case No. 2015-001467
Opinion No. 5505
Court of Appeals of South Carolina.
Heard May 3, 2017
Filed August 2, 2017

Sharnaisha Naki Richardson-Bax, of The Bax Law Firm, PA, of Beaufort, for Appellant.

Harry O. Shaw, III, of Charleston, for Respondent South Carolina Department of Social Services Child Support Division.

April Rogers, of Charleston, Pro Se.

Addison D. Fender, of Fender Law Firm, of Beaufort, as Guardian Ad Litem.

GEATHERS, J.:

Michael Ashburn appeals the family court's order denying relief from a previous order of paternity that found him to be the father of minor child E.A. (Child). Ashburn argues it is no longer equitable that the paternity order, wherein Ashburn acknowledged paternity of Child, have prospective application because genetic tests show Ashburn is not Child's biological father. He also argues the family court failed to (1) conduct an analysis on the potential adverse impact of the determination on the public interest and (2) consider the best interests of Child. We reverse.

## FACTS/PROCEDURAL HISTORY

Ashburn and April Rogers (Mother) were involved in a relationship lasting from late 1999 to early 2000. Mother became pregnant during this time and she gave birth to Child in October 2000. Ashburn is Caucasian, Mother is African-American, and Child is biracial. Mother informed Ashburn that he was the only Caucasian with whom she had been intimate. At the time, Ashburn was enlisted in the United States Marine Corps and stationed at Parris Island in Beaufort, South Carolina. Ashburn did not attend Child's birth and did not visit Child until the Marine Corps required him to when Child was seven months old.

Subsequently, Ashburn was served with an Administrative Process Notice of Financial Responsibility and Paternity Determination, and an administrative conference was held on

March 28, 2001. Although Ashburn was given the opportunity to request genetic testing at the conference, he waived it. The family court prepared an Administrative Process Order of Financial Responsibility that Ashburn and Mother signed. The order required Ashburn to pay $100.00 semi-monthly in child support. In the order, Ashburn admitted to being the natural father; the order states "[non-custodial parent] freely and voluntarily acknowledged paternity" of Child.

In May 2002, Ashburn signed an agreement with the Department of Social Services (DSS) requesting genetic testing, but he failed to submit a sample. In 2003, Ashburn was re-stationed in Japan, and contact ceased between Ashburn, Mother, and Child. Thereafter, Ashburn did tours of duty in Iowa and Hawaii, and as of June 2014, he was serving in North Carolina.

In November 2012, Mother requested the family court modify Ashburn's child support obligation. The following month, Ashburn requested visitation with Child, and the parties agreed to arrange a visit. Ashburn met with Child in Charleston, South Carolina. During this visit, Ashburn obtained a genetic sample from Child and submitted his and Child's genetic samples with a drug-store DNA kit for paternity testing. The test excluded Ashburn as Child's biological father.

Based on the results of the self-conducted DNA test, Ashburn filed an independent action to disestablish paternity in April 2013 on the grounds of fraud and material mistake of fact. DSS scheduled genetic testing of Ashburn and Child, and the results confirmed Ashburn was not the biological father of Child.

At the June 2014 hearing on the petition to disestablish paternity, Mother testified she could not understand the results of the DNA test because Ashburn was the only Caucasian man with whom she had been intimate. However, in responding to the family court's examination, Mother subsequently admitted she had become intoxicated one night while at a party with a Caucasian male friend and "something" could have happened—this was apparently around the time of Child's conception. The family court found there was no extrinsic fraud to support relief from the previous determina-

tion of paternity and Ashburn was the legal father of Child. Ashburn filed a motion for reconsideration arguing for the first time, pursuant to Rule 60(b)(5), SCRCP, "it [was] no longer equitable that the judgment should have prospective application." The family court denied the motion for reconsideration. This appeal followed.

## ISSUE ON APPEAL

Did the family court err in finding Ashburn is Child's legal father despite genetic testing proving he is not Child's biological father?

## STANDARD OF REVIEW

■■■■ "In appeals from the family court, the appellate court has the authority to correct errors of law and to find facts in accordance with its own view of the preponderance of the evidence." *Mr. T v. Ms. T*, 378 S.C. 127, 131–32, 662 S.E.2d 413, 415 (Ct. App. 2008). However, the appellate court is "not required to ignore the fact that the [family] court, who saw and heard the witnesses, was in a better position to evaluate their credibility." *Fiddie v. Fiddie*, 384 S.C. 120, 124, 681 S.E.2d 42, 44 (Ct. App. 2009). Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed. *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011).

## LAW/ANALYSIS

■■■■ Ashburn contends he should be permitted to disestablish paternity for two reasons. First, Ashburn argues, pursuant to Rule 60(b)(5), it is no longer equitable that the previous order establishing paternity have prospective application.[1] Second, Ashburn argues the family court failed to ad-

---

1. Ashburn asserts Rule 60(b) grounds via an independent action rather than by motion. We acknowledge the distinction between independent actions and motions drawn by other jurisdictions applying Rule 60 of the Federal Rules of Civil Procedure. *See Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77–78 (5th Cir. 1970) (recognizing "two [distinct] procedures for obtaining relief from a final judgment," one by motion and one by independent action); *id.* at 79 (listing elements of an

dress the adverse impact of the determination on the public interest.[2] Additionally, Ashburn argues the family court erred

independent action similar to those set forth in *National Surety Co. of New York v. State Bank of Humboldt*, 120 F. 593, 599 (8th Cir. 1903): "(1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake [that] prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of [the] defendant; and (5) the absence of any adequate remedy at law."); *see also* 47 Am. Jur. 2d *Judgments* § 718 (2017) (listing similar elements to *Bankers Mortgage Co.* that a claimant must establish when seeking equitable relief from a judgment through an independent action).

Under the South Carolina Rules of Civil Procedure, however, a litigant is not restricted from asserting Rule 60 grounds for relief from judgment when that litigant brings an independent action rather than a motion. *See Momani v. Van Surdam*, 296 S.C. 409, 410, 373 S.E.2d 691, 691 (Ct. App. 1988) ("[R]ule [60, SCRCP,] does not indicate that the power of a court to entertain an independent action to relieve a party from a judgment is limited to actions based on any particular reasons to the exclusion of the other reasons specified."); *id.* (reversing the circuit court's ruling that, in an independent action under Rule 60, a litigant was limited to asserting as grounds for relief "60(b)(4) [when] the [j]udgment is void and 60(b)(5) [when] the [j]udgment has been paid"); *see also* James F. Flanagan, *South Carolina Civil Procedure* 513 (3d ed. 2010) (stating our "jurisdiction permits an independent action in equity to challenge a final judgment" when "it is no longer equitable that an order have prospective application"). Additionally, although *Mr. T* cited the Eighth Circuit's characterization of an independent action in equity, similar to *Bankers Mortgage Co.*, *Mr. T* further stated that nothing in the opinion "should be construed as a finding by this court as to a bright line test in which to consider the issues presented." 378 S.C. at 135, 139, 662 S.E.2d at 417, 419. Accordingly, we believe it is proper for this court to address Ashburn's inequitable-prospective-application argument regardless of the procedural mechanism by which he brings it.

2.  Even though it was not raised by the parties, it is incumbent upon the court to address preservation when preservation is a close question. Ashburn's Rule 60(b)(5) argument was raised explicitly in his Rule 59(e) motion. However, a thorough review of the record shows the family court considered the application of *Mr. T*—which includes an extensive discussion of a putative father's ability to disestablish paternity pursuant to Rule 60(b)(5)—but, admittedly lacking conclusive guidance from the opinion, the family court distinguished *Mr. T* and upheld the previous determination of paternity based on finality. In our estimation, technical application of the procedural rule of preservation would work an injustice given the issues present concern the rights of a minor and matters of equity. Therefore, we will address the merits of Ashburn's argument. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 330, 730 S.E.2d 282, 285 (2012) (stating that though our appellate courts "should follow ... longstanding precedent and resolve [an] issue

in failing to make an explicit ruling regarding the best interests of Child.[3]

As to Ashburn's 60(b)(5) argument, the family court, relying on *Mr. G v. Mrs. G*, 320 S.C. 305, 465 S.E.2d 101 (Ct. App. 1995), noted it is the policy in South Carolina that once a case is decided, it should remain decided with certain, very narrow exceptions. In proceeding to rule, the family court determined that no exception applied. Although neither the family court's order nor the parties' briefs on appeal discussed the application of res judicata or collateral estoppel, the family court's effort to distinguish *Mr. T* requires that we address the doctrines here.

"Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Judy v. Judy*, 393 S.C. 160, 172, 712 S.E.2d 408, 414 (2011) (quoting *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999)). "Under the doctrine of res judicata, '[a] litigant is barred from raising any issues [that] were adjudicated in the former suit and any issues [that] might have been raised in the former suit.'" *Id.* (first alteration in original) (quoting *Plum Creek Dev. Co.*, 334 S.C. at 34, 512 S.E.2d at 109). However, res judicata and collateral estoppel "have been subjected to exceptions to their

on preservation grounds when it clearly is unpreserved," it is "good practice for us to reach the merits of an issue when error preservation is doubtful"); *id.* at 333, 730 S.E.2d at 287 (Toal, C.J., concurring in result in part and dissenting in part) ("[W]here the question of preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation. When the opposing party does not raise a preservation issue on appeal, courts are not precluded from finding the issue unpreserved if the error is clear. However, the silence of an adversary should serve as an indicator to the court of the obscurity of the purported procedural flaw."); *see also Altman v. Griffith*, 372 S.C. 388, 396, 642 S.E.2d 619, 623 (Ct. App. 2007) (addressing an unpreserved issue regarding the custody of a minor child because "procedural rules are subservient to the court's duty to zealously guard the rights of minors" (quoting *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000))).

3. We address the best interests of Child along with the Rule 60(b)(5) analysis because, as discussed below, the Rule 60(b)(5) analysis subsumes the question of whether disestablishing paternity is in the best interests of Child.

application." *Mr. T*, 378 S.C. at 137, 662 S.E.2d at 418. These "preclusive doctrines are 'not to be rigidly or mechanically applied and must[,] on occasion, yield to more fundamental concerns.'" *Id.* at 138, 662 S.E.2d at 419 (quoting *People v. Plevy*, 52 N.Y.2d 58, 436 N.Y.S.2d 224, 417 N.E.2d 518, 521 (1980)). Collateral estoppel or res judicata "may be precluded [when] unfairness or injustice results, or public policy requires it." *Carrigg v. Cannon*, 347 S.C. 75, 81, 552 S.E.2d 767, 770 (Ct. App. 2001) (citing *State v. Bacote*, 331 S.C. 328, 331, 503 S.E.2d 161, 163 (1998)).

At the administrative conference in 2001, Ashburn waived genetic testing and signed an order admitting he was Child's natural father. Based on the results of a self-conducted DNA test, Ashburn filed an action in 2014 seeking to disestablish paternity of Child. Arguably, Ashburn would be barred by res judicata from contesting paternity because the 2001 order establishing paternity is between the same parties and arises out of the same transaction or occurrence as his current claim seeking to disestablish paternity. However, the analysis does not end there because it is necessary to address whether the circumstances warrant precluding the application of res judicata and granting Ashburn relief from the 2001 order establishing paternity.

Our courts have not directly applied Rule 60(b)(5), whether brought by motion or independent action, to relieve a father from a previous order establishing paternity but have intimated that it is possible. *See Mr. T*, 378 S.C. at 136, 139, 662 S.E.2d at 418–19 (reversing a motion to dismiss and remanding for development of the record and finding that a previous determination of paternity is subject to attack under Rule 60(b)(5) if the appropriate circumstances are met); *Evans v. Gunter*, 294 S.C. 525, 526–27, 529, 366 S.E.2d 44, 45, 47 (Ct. App. 1988) (reversing an order granting a motion to dismiss by concluding the husband's allegation that his wife lied to him about his paternity and induced him to sign a waiver form could be considered extrinsic fraud under Rule 60(b) and would also "make out a case such that it would no longer be equitable" for the previous finding of paternity to have prospective application under Rule 60(b)(5)); *see also Mr. G*, 320 S.C. at 316, 465 S.E.2d at 107 (Hearn, J., dissenting) (recognizing, in addition to fraud, Rule 60(b)(5) may entitle the husband to relief from a previous child support order and finding of

paternity when he relied on his wife's representation of paternity).

■ The courts in *Mr. T* and *Mr. G* have provided some considerations pertinent to the decision of whether to grant a legal father relief from a previous order establishing paternity. The best interests of the child,[4] the interests of the parents or alleged parents,[5] and the financial impact on the alleged father[6] are relevant considerations. In addition to these concerns, this court in *Mr. T* noted that deciding paternity based on finality is troubling in light of the significant changes in DNA testing procedures allowing for more accurate determinations and because "knowledge of a biological parent is important for purposes of medical history, genetic defects, [and] inheritance rights." 378 S.C. at 138–39, 662 S.E.2d at 419.

Similar considerations have been applied in other jurisdictions determining whether the circumstances warrant granting a legal father relief from a previous order establishing paternity. Paramount are the best interests of the child.[7] Whether under the umbrella of the "best interests of the child" or independently, other jurisdictions consider the relationship between the child and legal father,[8] the amount of time that has passed since the previous finding of paternity,[9]

---

4. *Mr. T*, 378 S.C. at 138, 662 S.E.2d at 419.

5. *Id.* (noting that an accurate determination regarding paternity significantly affects the interests of parents and alleged parents); *see Mr. G*, 320 S.C. at 316, 465 S.E.2d at 107 (Hearn, J., dissenting) (acknowledging a legal father bound by a family court judgment was subject to incarceration for failure to pay child support, even though the legal father alleged the judgment was fraudulently obtained).

6. *Mr. G*, 320 S.C. at 316, 465 S.E.2d at 107 (Hearn, J., dissenting) (recognizing that by not granting the legal father relief from the previous judgment because the fraud alleged was intrinsic, the legal father would be required to pay child support in excess of $50,000 to satisfy a judgment he alleged was fraudulently obtained).

7. *State ex rel. W. Va. Dep't of Health & Human Res., Child Support Enf't Div. v. Michael George K.*, 207 W.Va. 290, 531 S.E.2d 669, 676 (2000).

8. *Glover v. Severino*, 946 A.2d 710, 716 (Pa. Super. Ct. 2008).

9. *Id.* at 715 (finding that a legal father was not estopped from denying paternity even though the child was ten years old). *But see Michael*

and whether the mother withheld the possibility that there might be other potential fathers.[10]

▮▮▮ We find, in accordance with the previous paternity cases of our courts and instructive decisions of other jurisdictions, there exists in the present case such special circumstances warranting equitable relief from the previous finding of paternity. *See Mr. T*, 378 S.C. at 135, 662 S.E.2d at 417 (noting that the structure of Rule 60(b)(5) allows a court to entertain an independent action for relief from an order "based on such rare, special, exceptional[,] or unusual circumstances that may warrant equitable relief, including accident or mistake").

Certainly, no interest of Child other than financial is served by upholding Ashburn's paternity. This is especially true given the statements by the parties that a parent-child relationship will not develop between Ashburn and Child. We are not convinced the financial interest is the determining factor; otherwise, upholding paternity would always be in the child's best interests regardless of the relationship between the child and putative father. *Cf. V.E. v. W.M.*, 54 A.3d 368, 371 (Pa. Super Ct. 2012) ("[When] there is no relationship, application of [paternity by estoppel] is irrelevant to the child's best interests. Absent a relationship, what becomes relevant is who will be financially responsible for the child."). Therefore, we focus on the parent-child relationship between Ashburn and Child.

We find the family court incorrectly ascertained the emotional consequences to Child in upholding the previous order of paternity. The evidence in the record shows there is no significant parent-child relationship. Ashburn did not attend Child's birth and did not visit Child until she was seven months old, and that visit was not voluntary but rather a requirement of the Marine Corps. Thereafter, Ashburn, Moth-

---

*George K.*, 531 S.E.2d at 671–72, 677 ("[I]t is significant that there was relatively little time (6 months or so) between [the legal father's] initial acknowledgment of paternity and his contesting it.").

10. *Glover*, 946 A.2d at 715 (noting that legal fathers were not estopped from denying paternity in previous cases in which the time period exceeded ten years when the mothers concealed the possibility of other fathers).

er, and Child lost contact. Ashburn was subsequently stationed in Japan, Hawaii, Iowa, and North Carolina. Ashburn had no contact with Child until the visit in Charleston when Child was twelve years old. Despite Child considering Ashburn to be her father, there is no evidence in the record showing Child attempted to establish a relationship with Ashburn. Because there is no significant parent-child relationship, there is a low risk of emotional harm in severing the relationship. *See Glover*, 946 A.2d at 716 ("Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father." (quoting *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176, 180 (1997))).

In addition to the absence of a parent-child relationship, we consider what financial impact upholding the previous judgment would have on Ashburn. Ashburn dutifully paid child support for Child's entire life, sixteen years. Barring any increase in child support, Ashburn would have to pay approximately $3,000 [11] more in support until Child reaches the age of majority.[12] We also acknowledge the possibility that Ashburn could be required to pay college expenses. *See McLeod v. Starnes*, 396 S.C. 647, 660, 723 S.E.2d 198, 206 (2012) (noting that a family court is permitted to award college expenses incident to child support if certain criteria are met). Although more than ten years have passed since the original order establishing paternity, we do not believe this alone is sufficient to uphold the previous order given that Mother did not disclose the possibility of other fathers to Ashburn. *See Glover*, 946 A.2d at 715 (noting that legal fathers were not estopped from denying paternity in previous cases in which

---

11. This amount is an estimate. Ashburn will have to pay $200 per month until Child turns eighteen in October 2018. Fifteen months will pass between August 2017 and October 2018, requiring Ashburn to pay a total of $3,000 (15 months x $200/month).

12. Ashburn is not seeking reimbursement for previously paid child support. In any event, Rule 60(b)(5) would not provide retroactive relief, as the rule only pertains to the prospective application of a judgment.

the time period exceeded ten years when the mothers concealed the possibility of other fathers). In fact, Ashburn accepted Mother's representation that he was the father. In doing so, he declined to contest paternity, and he did what many would resist by accepting responsibility for Child.

Furthermore, we find relief from the previous order establishing paternity is warranted because the policies that support upholding paternity based on finality are not implicated in the present case. *See id.* at 716 (noting the policy that undergirds paternity by estoppel in Pennsylvania is "protection of children and of the family unit"). The public policy of South Carolina "encourages and promotes reconciliation between spouses." *Theisen v. Theisen*, 394 S.C. 434, 449, 716 S.E.2d 271, 278 (2011) (Pleicones, J., concurring in part, dissenting in part) (citing *Towles v. Towles*, 256 S.C. 307, 182 S.E.2d 53 (1971)). Additionally, this state's public policy discourages causes of action that would undermine and destroy family unity. *See Fowler v. Fowler*, 242 S.C. 252, 256, 130 S.E.2d 568, 569 (1963) ("The rule prohibiting suit by a minor against the parent for a personal tort is based upon considerations of public policy, which discourage causes of action that tend to undermine and destroy family unity and parental discipline."). Similar to *Glover*, this state's policies of reconciliation and preservation of the family unit are enforced by upholding a previous determination of paternity based on finality. However, the policies of promoting reconciliation and discouraging actions that would destroy family unity are not implicated in the present case because Ashburn and Mother were not married, reconciliation is highly unlikely considering Ashburn is married with two children, and there is no family unity at risk of destruction.

In conclusion, given the preponderance-of-the-evidence standard of review, the circumstances in the present case warrant granting Ashburn relief because it is no longer equitable that the previous order establishing paternity have prospective application. *See Mr. T*, 378 S.C. at 131–32, 662 S.E.2d at 415 ("In appeals from the family court, the appellate court has the authority to correct errors of law and to find facts in accordance with its own view of the preponderance of the evidence."); *id.* at 135, 662 S.E.2d at 417 (stating Rule 60(b)

allows a litigant to seek equitable relief from a previous order establishing paternity under special circumstances).

In light of the foregoing, we decline to address Ashburn's remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when the resolution of a prior issue is dispositive).

## CONCLUSION

Accordingly, the decision of the family court is **REVERSED.**

MCDONALD and HILL, JJ., concur.